THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Dewanna Johnson, Sheilla Nathan, | * | |
| Alonzo Tutson, Evora Sykes, Chanell Hobbs, | * | |
| Revisha Silas, Evette Townsend, | * | |
| Plaintiffs, | * | |
| | * | Case No. 4:25-CV-00418-ALM |
| | * | |
| v. | * | JURY DEMAND |
| | * | |
| Providence Homeowners Association, | * | |
| FirstService Residential Texas, Inc., | * | |
| Defendants. | * | |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## Table of Contents

I.    Introduction…………………………………………………………………………………1
II.   Factual Background………………………………………………………………………3
III.  The proposed Rules 23(b)(2) class……………………………………………………4
      A. Standing requirements are met for the Rule 23(b)(2) class…………………………5
      B. Rule 23(a)(1) – Numerosity…………………………………………………………...9
      C. Rule 23(a)(2) – Commonality……………………………………………………10
      D. Rule 23(a)(3) – Typicality………………………………………………………...11
      E. Rule 23(a)(4) – Plaintiff Class Representatives will fairly and adequately protect the interests of the Class…………………………………………………………12
      F. Rule 23(b)(2) requirements…………………………………………………………12
IV.   The proposed Rule 23(b)(3) class……………………………………………………...13
      A. Standing requirements are met for the Rule 23(b)(3) class………………………..14
      B. Rule 23(a)(1) – Numerosity………………………………………………………15
      C. Rule 23(a)(2) – Commonality……………………………………………………15
      D. Rule 23(a)(3) – Typicality………………………………………………………...16
      E. Rule 23(a)(4) – Plaintiff Class Representatives will fairly and adequately protect the interests of the Class……………………………………………………17
      F. The Rule 23(B)(3) requirements are met – the common issues predominate, and the class is a superior way of handling the disputes………………………………………..18
V.    Appointment of Plaintiffs' counsel for class counsel………………………………….21
VI.   Conclusion……………………………………………………………………….21
      Signature…………………………………………………………………………22
      Certificate of Conference…………………………………………………………...22
      Certificate of Service………………………………………………………………23

## Table of Authorities

**Cases**

*Bank of America v. City of Miami*, 581 U.S. 189 (2017)…………………………………………5
*Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003)…………………………………...18

*Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290 (5th Cir. 2001)……………………………….….18
*B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019) …………………………………..7
*Chavez v. Plan Benefit Services, Inc*., 108 F.4th 297 (5th Cir.2024)
………………………………………………………………2, 7, 8, 9, 14, 16, 18, 19, 20
*Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552, 579 (N.D. Ill. 2023)………………………………………...21
*Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir. 1982)………………………………...12
*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014)………………………………...15, 19, 20
*Lightbourn v. County of El Paso*, 118 F.3d 421 (5th Cir. 1997)………………………………………10
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)…………………………………………………...5
*Sambrano v. United Airlines, Inc.*, 347 F.R.D. 155 (N.D. Tex. 2024)…………………………………………………………………………21
*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999)………………… 9, 10, 11, 15, 16
*Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325 (E.D. Tex. 2019…………………………………………9

**Statutes**
42 U.S.C. § 3602(i)………………………………………………………………………………..5
42 U.S.C. § 3612(g)(3)…………………………………………………………………………...18
42 U.S.C. § 3612(o)…………………………………………………………………… .1, 2, 4, 19
42 U.S.C. § 3613(a)……………………………………………………………………………….4

**Rules**
Fed. R. Civ. P. 23………………………………………………………………………............2
Fed. R. Civ. P. 23(a)……………………………………………………………………………9
Fed. R. Civ. P. 23(a)(1)………………………………………………………………………9, 15
Fed. R. Civ. P. 23(a)(2)…………………………………………………………………………10, 15
Fed. R. Civ. P. 23(a)(3)…………………………………………………………………………11, 16
Fed. R. Civ. P. 23(a)(4)…………………………………………………………………………12, 17
Fed. R. Civ. P. 23(b)(2)……………………………………………1, 4, 5, 7, 8, 9, 10, 11, 12
Fed. R. Civ. P. 23(b)(3)……………………………………………1, 13, 14, 15, 16, 17, 18, 19
Fed. R. Civ. P. 23(b)(3)(A)……………………………………………………………………19
Fed. R. Civ. P. 23(b)(3)(B)……………………………………………………………………19
Fed. R. Civ. P. 23(b)(3)(C)……………………………………………………………………19
Fed. R. Civ. P. 23(b)(3)(D)……………………………………………………………………19
Fed. R. Civ. P. 23(c)(4)………………………………………………………………………..19
Fed. R. Civ. P. 23(c)(1)(C)……………………………………………………………………20
Fed. R. Civ. P. 23(c)(5)………………………………………………………………………19
Fed. R. Civ. P. 23(g)…………………………………………………………………………..21
Fed. R. Civ. P. 23(g)(1)(A)……………………………………………………………………21

**Other Authorities**
HUD Charge Dkt. #11-1……………………………………….......3, 8, 9, 10, 11, 13, 16, 18, 19
HUD Final Investigative Report………………………………………………………………9, 10

ii

## I.    Introduction

Plaintiffs Dewanna Johnson and Sheilla Nathan move the Court for certification of two classes that they seek to represent:

1) a Fed. R. Civ. P. 23(b)(2) class of all aggrieved persons who were injured by Defendants' Section 8 ban on leasing to Housing Choice Voucher (voucher) tenants and other rental restriction policies and racial hostility actions for whom injunctive and declaratory relief is sought, and

2) a Fed. R. Civ. P 23(b)(3) class of voucher tenants residing in PHOA and injured by the Defendants' policies and actions for whom an award of damages is sought.

The proposed Rule 23(b)(2) class includes 51 of the 53 aggrieved parties identified by the U.S. Department of Housing and Urban Development (HUD) Charge of Discrimination (Charge) plus additional aggrieved parties.[1] The proposed Rule 23(b)(3) class includes the 40 voucher tenants from the Charge along with additional aggrieved voucher tenants. After the Charge was issued on January 14, 2025, and parties elected to have the case proceed in federal court, the U.S. Attorney General was required to file a federal lawsuit on behalf of the Complainants pursuant to the Fair Housing Act (FHA), 42 U.S.C. §3612(o). The U.S. Attorney General refused to file a lawsuit on behalf of any of the 53 Complainants, even though the HUD Charge remains in effect. As such, the HUD Complainants, many of whom are voucher tenants, were abandoned and without recourse for the finding of racial discrimination issued by HUD on their behalf. Class relief is requested to provide relief to aggrieved persons for common questions of law and fact as

---

[1] The two omitted parties from the proposed classes are the Denton Housing Authority (Denton HA) and the McKinney Housing Authority (MHA) who have filed their own lawsuits that are currently pending in the U.S. District Court for the Eastern District of Texas, Sherman Division.

1

would have been provided had the Attorney General filed a civil action in compliance with 42 U.S.C. § 3612(o).

Two Plaintiffs, Ms. Johnson and Ms. Nathan seek to be the class representatives for the two proposed classes.[2] Ms. Johnson and Ms. Nathan are HUD Complainants covered by the HUD Charge of Discrimination. Plaintiffs Ms. Johnson and Ms. Nathan, as Black voucher tenants who resided in rental homes in Providence Homeowners Association (PHOA) in Providence Village, have standing to assert the injuries suffered from the Defendants' past enactment of the Section 8 voucher housing ban, the unchecked racial hostility, and the rental restrictions that prevent voucher tenants from residing there. This is the same standing suffered by the members of the proposed classes. Defendants' Section 8 Housing ban and enactment of restrictions on renting to tenants in the PHOA is the same action that is causing the harm to the members of the classes. As set out below, standing for the class members for both of the proposed classes is established under either of the two approaches set out in *Chavez v. Plan Benefit Services, Inc.*, 108 F.4th 297 (5th Cir. 2024), to ensure standing is met for class certification.

Both proposed classes meet the elements of Fed. R. Civ. P. 23 as set out below. Plaintiffs can meet their burden of proof to show compliance with Rule 23 and request a hearing on this motion. HUD's Charge sets out the facts demonstrating HUD's reasonable cause to believe that the Defendants' discriminated on the basis of race or color in violation of the FHA. These facts are typical and representative of all of the aggrieved persons for whom class status is sought. Plaintiffs also move for the appointment of Plaintiffs' counsel as class counsel for the classes.

---

[2] While all seven Plaintiffs meet the definitions of the proposed classes, only two are seeking to be class representatives.

## II.   Factual background

In June 2022, Defendants Providence Homeowners Association (PHOA) and its property manager and agent FirstService Residential Texas, Inc. (FirstService) enacted a ban on PHOA owners leasing their homes to voucher tenants and other rental restrictions that work to ban voucher tenants from residing in PHOA (collectively "Rules"). The rental restrictions include limiting rentals by PHOA homeowners to only one home and the requirement for the owner to have lived in the home for 24 months prior to being allowed to rent a home. PHOA is located in Providence Village, Texas, an outer ring Dallas suburb. HUD's Charge of Discrimination found that the enactment of these Rules was done with discriminatory intent and with the purpose of excluding the majority Black voucher tenants living in PHOA. Dkt. #11-1, pp. 36-41.

With the enactment of the June 2022 Rules, many voucher tenants were forced to move in the middle of leases as landlords feared the daily fines that PHOA intended to assess for violations of the new rules. The enactment of the Rules caused significant injuries to voucher tenants and landlords and was accompanied by extreme racial hostility, intimidation and threats by the PHOA residents which were not addressed by Defendants. The enactment triggered upheaval and chaos for Plaintiffs and other class members who struggled with the prospect of having to move, with the fear of not finding replacement housing and being homeless, and with the fear of racial hostility for themselves and their children. Before the enactment of the Rules and continuing afterwards, HUD finds that the racial hostility in PHOA was rampant in social media posts by PHOA residents, including by members of the PHOA Board and PHOA Amendment Committee members. HUD's Charge finds that the Defendants failed to take adequate steps to address the pervasive racial hostility and racial intimidation. Defendants' failure to address the ongoing racial hostility toward Black voucher tenants occurring both in

3

PHOA and online in PHOA social media has caused significant harm to the Black voucher residents, the majority of whom are female.

The U.S. Attorney General's refusal to file the requisite civil action pursuant to the FHA has left 53 Complainants without a lawsuit filed on their behalf by the U.S. Excluding the nine HUD Complaints who have filed a lawsuit concerning Defendants' actions covered by the HUD Charge, this leaves 44 HUD Complainants who have not filed a lawsuit. Absent class certification, the substantial injuries inflicted by the Defendants and compounded by the denial of the judicial process required by 42 U.S.C. § 3612(o) will go without a remedy. Class certification is available as the FHA allows for private parties to file suit whether or not the U.S. Attorney General files a suit based on a HUD Charge. 42 U.S.C. § 3613(a). Plaintiffs' motion for class certification can substitute for the judicial process denied by the U.S. Attorney General.

The FHA provides that the statute of limitations is tolled for complainants during the pendency of the administrative complaint. Regardless, there are remaining rental restrictions that are an ongoing and continuing violation under the FHA. In addition, the statute of limitations for the members of the class who did not file an administrative complaint had not expired before the filing of this suit. The explicit PHOA ban on vouchers was eliminated by state law on June 18, 2023, effective September 1, 2023, and removed from PHOA's regulations on June 26, 2023. Plaintiffs' complaint was timely filed within the two years of the termination of that discriminatory housing practice per 42 U.S.C. § 3613(a).

### III.    The proposed Rule 23(b)(2) class

The first proposed class is defined as a Rule 23(b)(2) class of all aggrieved persons who as a result of the challenged voucher ban, rental restrictions impacting voucher tenants, and the racial hostility have suffered adverse effects because of Defendants' discrimination based on race

4

or sex.. The Fair Housing Act defines "aggrieved person" as any person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). The Supreme Court holds that "aggrieved person" under the FHA reflects congressional intent to confer standing broadly. *Bank of America v. City of Miami*, 581 U.S. 189, 197-198 (2017).

This class includes the 51 HUD complainants, who include 40 voucher tenants, eleven PHOA homeowners who leased homes to voucher tenants, and 4 PHOA residents. This class also includes others who were injured by Defendants' actions but did not file a HUD complaint, including 1) other voucher tenants who live or lived in PHOA during the voucher ban and rental restrictions and 2) other PHOA owners who lease or leased their homes to voucher tenants during the ban and rental restrictions.

## A. Standing requirements are met for the Rule 23(b)(2) class

Plaintiff representatives meet the elements of Constitutional standing - (1) an actual, concrete injury in fact (2) the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561, (1992). Both of the proposed class representatives have suffered injury in fact for the proposed Rule 23(b)(2) class. Plaintiff Ms. Johnson was a voucher tenant who had rented a home in PHOA with her children for over a year when the Defendants enacted the ban on vouchers and rental restrictions. As a result of the Defendants' Section 8 ban, she could no longer rent her home in PHOA. After unsuccessfully trying to find other homes to lease with her voucher, she worked with her landlord to continue to lease her home for another 2 years until she converted her voucher to a homeownership voucher to purchase the PHOA home from her former landlord

(who is also a HUD complainant). She continues to reside in this home as a homeowner using her voucher under the voucher homeownership program.

Ms. Johnson is still subject to  racial hostility because of her race while continuing to live in PHOA, her past status as a voucher tenant, and her present status as the recipient of voucher assistance even though that assistance is subsidizing her homeownership status rather than tenant status. In addition, the state law prohibiting discrimination by property owner associations about leasing to tenants based on their method of payment including vouchers,  HB 1193, does not protect her since HB 1193because she is not a tenant. She is still subject to discrimination based on the voucher source of income for her mortgage payment.

Plaintiff Ms. Nathan is a voucher tenant who rented a home in PHOA with her children and former husband for over 6 years. Dkt. #11, p. 37. Ms. Nathan and her family were forced to move out of PHOA because of Defendants' actions. Ms. Nathan is being barred from returning to PHOA by the discriminatory rental restrictions that make it difficult for landlords to lease to voucher tenants. In addition, should she seek return to PHOA as a voucher tenant she will be faced with the ongoing racial hostility and the gender discrimination from the rental rules.

Both of these voucher tenants have been injured by the Defendants' actions that include the enactment and implementation of the ban against landlords renting to voucher tenants, the enactment and implementation of the other rental restrictions on landlords' entering into leases which make it extremely difficult to impossible for voucher tenants to rent a unit to reside in PHOA, and the failure of the Defendants to take actions to stop the racial hostility, intimidation and threats towards Black voucher tenants in PHOA. All of the injuries are a direct result of the same conduct – the Defendants enactment of the voucher ban, the other rental restrictions, and failing to address the racial hostility in PHOA. The requested injunctive relief of eliminating the

rental restrictions and requiring the defendants to address complaints of racial hostility redresses the injuries caused by the same conduct.

The Fifth Circuit sets out two approaches to demonstrate how a class representative litigates for her own injuries and for those of the proposed class members. *Chavez,* 108 F.4th at 307-314. Plaintiffs and the proposed Rule 23(b)(2) class members meet the standing elements under either of the two *Chavez* approaches. The "class certification approach," is where once the court determines that the class representative has standing to pursue her own claims then the court moves on from the standing inquiry to the class certification analysis of Rule 23 to determine if there is any disjuncture between the representative and the class. *Id.* at 307-309. The second approach is "the standing approach" where the court determines if the class representative has standing to pursue the class claims by ensuring that the Defendants' use of race or other conduct does not implicate a significantly different set of concerns between the representative and the class members.  *Id*. at 108 F.4th at 311.

Plaintiff representatives meet the "class certification approach" because once they have demonstrated their individual standing to bring their claims, the standing inquiry is concluded and the Court proceeds to the Rule 23 requirements analysis to determine class certification.  *Id.* at 309, *citing B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019), *cert. denied*, __U.S.__, 140 S. Ct. 2509 (2020). After the individual standing analysis, any dissimilarity in injuries suffered is analyzed in the Rule 23 requirements. *Id.* Plaintiffs' injuries include the harms suffered by being forced to leave or the threat of being forced to leave their existing home in PHOA due to the Rules enactment, the loss of the rental value, the costs associated with having to move, the emotional suffering from the intentional racial discrimination directed at Black voucher tenants living in PHOA, and punitive damages. HUD's

7

Charge finds the Complainants were harmed by Defendants' actions. HUD Charge, Dkt. #11-1, pp. 35-36. Since Plaintiffs demonstrate injury in fact with evidence, the class certification approach is then satisfied once the evidence on the Rule 23 class requirements is met. These requirements are set out below.

Plaintiff representatives also meet the "standing approach" because they have standing to represent the claims of the class. *Chavez,*108 F.4th at 307-312. All of the aggrieved persons in the proposed Rule 23(b)(2) class have been injured by the same actions of the Defendants. They have all been injured by the enactment of the ban on vouchers and enactment of the rental restrictions that were intended to remove Black voucher tenants from PHOA. The Defendants' actions with these restrictions caused racial hostility, intimidation and threats to voucher tenants to take place in PHOA as well as in social media and Defendants did not take adequate action to address this hostility and threats. These actions have caused significant harm to all of the members of the proposed class. HUD Charge, Dkt. #11-1, pp. 35-36. As voucher tenants, Plaintiff representatives' injuries match those of the other voucher tenants who reside or resided in PHOA and are injured by the impact of the Rules and the racial hostility. In addition, the very same conduct by Defendants has caused injuries to the other members of the proposed Rule 23(b)(2) class - the PHOA owners who lease their homes to voucher tenants and to the PHOA residents who disagree with the Rules. In this case, the Defendants' conduct implicates the same set of concerns for the Plaintiff representatives as the conduct alleged to have caused injury to other members of the putative class. Those concerns are whether the Rules enacted to deny the ability to rent to voucher tenants is illegal. The enactment alone caused voucher tenants and landlords to act to comply with the new Rules and forced voucher tenants to leave PHOA. HUD Charge, Dkt. #11-1, pp. 32, 36. The Plaintiffs' injuries and interests are "sufficiently aligned with

8

those of the class" for the Plaintiff representatives to represent their interests for injunctive relief for the Rule 23(b)(2) class. *Chavez,* 108 F.4th at 311-312.

### B. Rule 23(a)(1) - Numerosity

The evidence demonstrates that the Rule 23(a) requirements are met. First, this proposed Rule 23(b)(2) class is so numerous that joinder of all members is impracticable. A class consisting of more than forty members raises a presumption that joinder is impracticable. *See Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 332 (E.D. Tex. 2019) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). The aggrieved persons for this proposed class exceed that number and is estimated to be over 150 persons. There are 51 HUD Complainants in this proposed class. In addition, there were a total of 165 voucher tenants residing in PHOA at the time of the enactment of the Rules. HUD Final Investigative Report, Dkt. #11-2, p. 91. This is within the range that generally satisfies the numerosity requirement. *Mullen*, 186 F.3d at 624. The Rule 23(a)(1) numerosity requirement is met.

The 51 HUD Complainants are aggrieved persons as found by HUD and they consist of the following: 40 voucher tenants (these voucher tenants include 130 household members, including seventy-eight minor children.); eleven PHOA owners who are renting or who were renting to tenants receiving vouchers; and four residents of PHOA who opposed the challenged actions described in the Charge that they allege will cause the loss of the important benefits from living in a racially integrated community. Dkt. #11-1, p. 3.

In addition to the 51 HUD Complainants, there are additional aggrieved persons in this proposed Rule 23(b)(2) class. These aggrieved persons who did not file HUD Complaints are other PHOA voucher tenants who reside or resided in PHOA and other PHOA owner landlords

9

who rent to voucher tenants. The estimate of the number of these additional aggrieved persons is as follows.

The estimate of the voucher tenants who live or lived in PHOA at the time of the June 2022 enactment of the voucher ban and rental restrictions is 165 according to the HUD Final Investigative Report for the HUD Charge. Dkt. #11-2, p. 91.[3] This includes the 40 voucher tenants who filed a HUD complaint. The number of current PHOA voucher residents can be obtained from the area housing authorities including the Dallas Housing Authority, Denton HA, and MHA, who have voucher tenants leasing in PHOA and from HUD records. Given that the number of voucher tenants past and present is over 150, joinder of all of these tenants in this lawsuit is impractical. *Mullen*, 186 F.3d at 624-25.

The estimate of the number of owners leasing PHOA homes to voucher tenants is also obtainable from the major housing authorities. This includes the 11 PHOA owners who lease to voucher tenants and who filed a HUD complaint. Since HUD estimates that there are approximately 150 voucher tenants in PHOA, there are numerous other PHOA owners in this category who lease to voucher tenants but who did not file a HUD complaint.

### C. Rule 23(a)(2)- Commonality

There are common questions of law or fact common to the proposed Rule 23(b)(2) class. Commonality for Rule 23(a)(2) is met "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). There are several common issues in this case including whether Defendants violated the FHA by discriminating on the basis of race and sex with the

---

[3] HUD's Charge estimates the number of voucher tenants residing in PHOA to go from 2% to 5% of the 2,250 PHOA houses during the events in the Charge. Dkt. #11-1, p.27 n. 9.

enactment and enforcement of the ban on vouchers and the other rental restrictions. These common issues include whether the evidence shows intentional racial discrimination by the Defendants and proof of disparate impact liability for discrimination on race and on sex, female. Amended Complaint, Dkt. #11, pp. 18 - 27. The resolution of these issues affects all members of the proposed Rule 23(b)(2) class, and the remedial injunctive and declaratory relief will help stop the ongoing discriminatory conduct and prevent it from happening in the future.

The HUD Charge states the evidence of the common questions of law and fact for the aggrieved persons who are HUD Complainants and who are members of this class. These HUD Complainants include voucher tenants, PHOA owners who lease their homes to voucher tenants, and PHOA residents who oppose the rental restrictions. HUD Charge, Dkt. #11-1, pp. 38 – 41. These same common questions of law and fact similarly pertain to the aggrieved persons who did not file HUD Complaints – the other PHOA voucher tenants and PHOA owners who lease to voucher tenants.

### D. Rule 23(a)(3) - Typicality

Plaintiffs Ms. Johnson and Ms. Nathan's claims are representative and typical of the claims of the proposed Rule 23(b)(2) class per Rule 23(a)(3). The burden is not demanding, and the test focuses on the similarity between the representative's legal and remedial theories and the theories of the class they seek to represent. *Mullen*, 186 F.3d at 625. Plaintiffs have suffered the same types of injuries as the other Black, female voucher tenants of the proposed Rule 23(b)(2) class. The conduct that is being challenged – the ban on leasing to vouchers, the rental restrictions that make it extremely difficult to lease a PHOA home, and the racial hostility towards Black voucher tenants - is the same conduct causing the injuries to the voucher tenants, the PHOA owners leasing to the tenants, and to the PHOA owners opposed to this conduct. In

11

this case, the legal and remedial theories are the same for opposing this conduct for the named Plaintiffs and for the proposed class demonstrating typicality. *Id*. at 625.

**E. Rule 23(a)(4) - Plaintiff Class Representatives will fairly and adequately protect the interests of the Class**

The representative Plaintiffs will fairly and adequately protect the interests of the Rule 23(b)(2) class. Plaintiff Johnson continues to reside in PHOA and remains subject to the Defendants' actions. Plaintiff Nathan is a voucher tenant who had to move out of her home in PHOA because of the Defendants' policies and actions. Both representative Plaintiffs have the willingness and ability to represent the proposed class and protect the interests of absentees. *See Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). Both Plaintiffs had their PHOA voucher tenancies directly impacted by the Rules enactment and by the ongoing racial hostility in PHOA. Both Plaintiffs are represented by Plaintiffs' counsel who have extensive experience representing class actions, including classes of voucher tenants. Declaration of Laura B. Beshara, pp. 2-5.

**F. Rule 23(b)(2) requirements**

This class is sought pursuant to Fed. R. Civ. P. 23(b)(2) in order to obtain injunctive and declaratory relief for the Defendants' actions based on race and sex. The proposed Rule 23(b)(2) class is appropriate because the Defendants have acted and refused to act on grounds that generally apply to the entire class thus making final injunctive and declaratory relief appropriate for the class. The Defendants' actions of enacting the Rules banning vouchers and the rental restrictions is conduct applicable to all of the class that has caused and is causing harm making injunctive relief appropriate. The Defendants' have refused to act to address the racial hostility, threats, and intimidation which is also generally applicable to the class making injunctive relief appropriate.

The adverse effects on the class of Defendants' actions include preventing voucher tenants in PHOA from 1) renting or continuing to rent and 2) inflicting terms and conditions of rental that are different based on race such as the racial hostility and intimidation from the PHOA. Other adverse effects prevent existing PHOA homeowners from leasing their homes in PHOA without first residing in them for 24 months and limiting the number of homes that can be leased to only one which will have a discriminatory effect because of race and sex and subject them and their tenants to racial hostility arising out of and connected to the challenged rental restrictions. The requested injunctive and declaratory relief would remedy the adverse effects on class members. The requested injunctive and declaratory relief is set out in the Amended Complaint. Dkt. #11, pp. 47-48.

The enactment of the June 2023 state law that prevents property associations from prohibiting its property owners from leasing to voucher tenants based on their method of payment with a voucher does not moot the requested relief and nor does PHOA's removal of the voucher ban from its Rules after the passage of the state law. The conduct is capable of repetition. HUD's Charge found that the other PHOA rental restrictions that remain in place have the same effect of getting rid of the voucher tenants from PHOA as the outright ban. The state law only prohibits method of payment and does not ban other ways to prohibit voucher tenants. HUD's Charge found that eliminating voucher tenants from PHOA continues to be the goal of the PHOA. Dkt. #11-1, pp. 20, 34.

**IV. The proposed Rule 23(b)(3) class**

The second proposed class is the Fed. R. Civ. P 23(b)(3) class for the award of damages. The definition of this class is voucher tenants who reside or resided in PHOA at the time of the

enactment of the Rules and who were injured by the Defendants' policies and actions for whom an award of damages is sought.

### A.  Standing requirements are met for the Rule 23(b)(3) class

Plaintiff representatives meet the standing requirements for the proposed Rule 23(b)(3) class under both the "class certification approach" and the "standing approach" of *Chavez*. Under the "class certification approach," Ms. Johnson and Ms. Nathan have suffered injury from Defendants' Section 8 voucher ban, restrictions, and racially hostile environment just like the other PHOA voucher tenant members of this proposed Rule 23(b)(3) class. Their injury is real and immediate. Both Plaintiffs were forced to find alternative housing for their families under duress and racial hostility. Both Plaintiffs are members of the class they seek to represent.  Both suffered damages of loss of rental value, out of pocket expenses, emotional distress from racially discriminatory threats and hostile environment, and fear for themselves and their children. The injuries were caused by Defendants enactment of the ban on vouchers, the rental restrictions, and the failure to take steps to eliminate the racial hostility. Standing is met under the "class certification approach" along with the evidence for the requirements of the proposed Rule 23(b)(3) class. *Chavez*, 108 F.4th at 308-309, 312.

The "standing approach" requirements are also met by both class representatives. Both Plaintiffs personally suffered injury caused by the conduct of the Defendants' actions enacting the ban on vouchers in PHOA, restrictions, and the accompanying racial hostility. This conduct by Defendants implicates the same set of concerns and caused the same type of injuries to the other Black voucher tenants residing in PHOA, who are the other members of the putative class. *Chavez*, 108 F.4th at 311, 313. All members of this voucher class were injured by the Rules targeting voucher tenants residing in PHOA and the conduct targeting Blacks. There is no unique

14

remedy required for the class representative voucher holders and nor do their injuries do not implicate a significantly different set of concerns from the other potential class members. *Id.*

## B. Rule 23(a)(1) - Numerosity

The Rule 23(a) numerosity requirement is met for the proposed Rule 23(b)(3) class. In addition to the 40 voucher tenants in HUD's Charge, there are numerous voucher tenants residing in PHOA. As of June 2022, the date of the enactment of the ban on Section 8 vouchers and the restrictions, there were 165 voucher tenants in residence in PHOA. Dkt. #11-2, p. 91. The specific number of voucher residents in PHOA since June 2022 can be obtained from the housing authorities in the area who have tenants in residence at PHOA and from HUD. Joinder of all of these voucher tenants in this lawsuit is impractical. *Mullen*, 186 F.3d at 624-25.

## C. Rule 23(a)(2) – Commonality

The commonality requirement is satisfied where class members raise at least one contention that is central to the validity of each class members claims. *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). The damages component may differ among class members so long as there is commonality of each class members claims. *Id.* The commonality is met in this case and involves more than one contention that is central to all of the PHOA voucher tenants who comprise this class. All of the voucher tenants have the same common questions of law and fact concerning Defendants' enactment of the No Section 8 voucher ban, rental restrictions and failure to address the racially hostile environment. These actions and the legal claims concerning them are central to all members of this proposed Rule 23(b)(3) class.

Further, the HUD Charge states that as a result of Defendants' discriminatory conduct, the voucher tenants who are HUD Complainants suffered actual damages, including emotional

15

distress. HUD Charge, Dkt. #11-1, p. 21. The voucher tenants have endured similar types of damages including loss of rental value, out of pocket expenses, and emotional distress. The Plaintiffs also seek punitive damages. While specific amounts of damages may differ among voucher tenants, the central common issues of facts and legal claims apply to the entire voucher class. Rule 23 (c)(4) can allow for class treatment of liability and subsequent determinations of damages if necessary. *See, e.g., Chavez*, 108 F.4th at 318.

### D.  Rule 23(a)(3) – Typicality

The typicality requirement is met for the Rule 23(b)(3) class as the similarity between the named Plaintiffs' legal and remedial theories and the theories of the voucher tenant class are the same. *Mullen*, 186 F.3d at 624. The legal claims of the Plaintiff representatives are typical of and the same as the Rule 23(b)(3) class.

The two class representatives represent the two situations faced by PHOA voucher tenants after the enactment of the ban and Rules – 1) PHOA voucher tenants who were forced to move out of PHOA and 2) those who continue to live in PHOA but fear their removal because of the rental restrictions make their landlords ineligible to lease to tenants. Both class representatives were leasing a home in PHOA with a voucher just like the proposed PHOA class when Defendants enacted the voucher ban and Rules. The enactment caused many tenants to move or try to move. Many PHOA voucher landlords required their tenants to leave by breaking existing leases to avoid fines. Plaintiffs Ms. Nathan was required by her landlord to move out of her long-time home in PHOA, and this experience was endured by other PHOA class members. HUD's Final Investigative Report contains significant accounts and evidence of the voucher tenants who had to move because of the Defendants actions enacting the voucher ban and Rules. Ms. Johnson's experience when the Rules were enacted led to her attempting to find rental

housing elsewhere with her voucher because her landlord said that she would have to move but was she unsuccessful at locating alternative housing to lease with her voucher. Similarly, many PHOA voucher tenants remain in PHOA but live with the concern that they will need to leave because of the rental restrictions in place.[4]

The PHOA voucher tenants have all experienced injuries from the Defendant's enactment of the Section 8 voucher ban and the Rules and the ongoing racial hostility and intimidation. Any differences in the extent of injury between the class representatives and the PHOA voucher class members does not defeat class certification because of the typical claims of the class representatives and the Rule 23(b)(3) PHOA voucher tenant class. *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297 (5th Cir. 2001).

### E.  Rule 23(a)(4) - Plaintiff Class Representatives will fairly and adequately protect the interests of the Class

Both Ms. Johnson and Ms. Nathan are voucher tenants who reside or resided in PHOA and have suffered injuries from Defendants' actions. They will fairly and adequately protect the interests of the Rule 23(b)(3) PHOA voucher tenant class. The representatives do not seek relief at the expense of other PHOA voucher tenants. Their interests are aligned with the PHOA voucher tenants, not antagonistic, to the proposed class, and the relief for the harms caused by the voucher ban and rental restrictions would benefit the entire PHOA voucher class. *Id*. at 298, 298 n. 33. Both class representatives are Black and at least 93% of the PHOA vouchers are Black. Both class representatives are females and 97% of the PHOA voucher head of households are female.

---

[4] Ms. Johnson was able to find a separate way to stay in PHOA by converting her rental voucher to the homeownership program to purchase her home from her former landlord.

**F. The Rule 23(b)(3) requirements are met – the common issues predominate and the class is a superior way of handling the disputes**

Plaintiffs can demonstrate predominance of common issues to the class over individual issues and that resolving these issues by class certification is superior to joinder of at least 150 PHOA voucher tenants. Fed. R. Civ. P. 23(b)(3); *Chavez*, 108 F.4th at 316. In this case, the questions of law and fact predominate over any questions affecting only individual members thus making the Rule 23(b)(3) class of PHOA voucher tenants the most fair and efficient method to adjudicate this case.

The predominance requirement entails identifying the substantive issues that will control the outcome, assessing which issues will predominate and then determining whether the issues are common to the class which will prevent the class from degenerating into a series of individual trials. *Chavez*, 108 F.4th at 316, *quoting Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003). The substantive issues that control the outcome and predominate are the factual and legal claims concerning Defendants' enactment of the PHOA voucher ban and rental restrictions and the failure to address the racially hostile environment. The legal issues of whether the Defendants' actions violate the FHA by intentionally discriminating on the basis of race, as found by HUD's Charge, predominate.

Class certification is superior to other methods. The 40 voucher tenants in HUD's Charge and the other aggrieved persons referred to in HUD's Charge would have had their claims heard in federal court with the U.S. Attorney General representing them at no cost as required by the FHA. HUD's Charge sought relief including relief that:

> Awards such actual damages as will fully compensate Complainants and any other aggrieved persons for any and all injuries caused by Respondents' discriminatory conduct, pursuant to 42 U.S.C. § 3612(g)(3). Dkt. #11-1, p. 22.

18

Because the U.S. Attorney General and HUD have declined to pursue that case, class certification is superior to provide relief to a class of aggrieved persons that HUD has found were discriminated against on the basis of race by Defendants. Dkt. #11-1. Had HUD pursued the Charge case as required, then there would have been at least the 53 complainants and perhaps more aggrieved persons in that case. 42 U.S.C. § 3612(o).  Individual cases brought by 150 or more PHOA voucher tenants are not likely given that voucher tenants have limited resources to pursue litigation of their claims. Since the liability claims for this proposed class predominate, liability could be determined for the class overall. Determining damages for the class after that stage could require subclasses which is a recognized solution for determining individual damages after liability is established. Fed. R. Civ. P. 23(c)(5). In addition, the Fifth Circuit "common and individual issues" can be divided and tried into "multiphase trials under Rule 23(c)(4), which permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination." *Chavez*, 108 F.4th at 318, *quoting In re Deepwater*, 739 F.3d at 816.

The other Rule 23(b)(3)(A) – (D) matters show the need for class certification. First, the class members' interests in individually controlling the prosecution of separate actions are minimal since the Department of Justice has refused to file suit. Very few voucher tenants can obtain attorney representation to file a lawsuit. Second, there is no litigation concerning already begun by class members aside from this case that would interfere with class certification. The separate suits by the two housing authorities will not recover damages for individual PHOA voucher tenants harmed by Defendants' actions.  *McKinney Housing Authority v. Providence Homeowners Assoc., et. al.*, 4:25-cv-467 -ALM, Complaint, Dkt. #1, pp. 3, 20, 21; *Denton Housing Authority v. Providence Homeowners Assoc., et. al.*, 4:25-cv-774-ALM, Complaint, Dkt. #1, pp. 29–30. Third, it is desirable to concentrate the litigation in the Eastern District which

19

is the location of the PHOA and many of the voucher class members reside in the Eastern District area. Fourth, any difficulties of managing this proposed class do not appear to be great or to make the case unmanageable. Notice to the PHOA voucher tenants affected by the Defendants' enactment of the voucher ban and rental restrictions can be done with the assistance of the local housing authority records. After notice and the opportunity to opt out of the class, the issue of liability predominates for this proposed class, especially given the HUD Charge finding of racial discrimination. The issues of damages can be categorized as loss of rental value, out of pocket expenses including moving expenses, emotional distress from racially hostile environment and other actions, and punitive damages. These could be handled by subclasses or by class treatment of particular issues and reserve other issues for individual determination. *See, In re Deepwater*, 739 F.3d at 817; Fed. R. Civ. P. 23(c)(5). Proceedings could be structured to establish liability on a class-wide basis and then, if liability is found, with separate hearings to determine damages of individual class members. *Chavez*, 108 F. 4th at 318; *In re Deepwater*, 739 F.3d at 817.

Plaintiffs believe that a trial plan that determines liability first for the Plaintiffs and for the class could be a preferable way to proceed because of the common issues of law and fact for liability predominate. Once liability is determined then the additional possibilities of common treatment of damage issues such as Defendants' liability for punitive damages where possible may be an issue for determination. Additional subclasses and bifurcation of damages issues after determination of liability may be the best way to proceed. *Chavez*, 108 F.4th at 320; *In re Deepwater Horizon*, 739 F.3d at 817. Plaintiffs recognize that the fairness and manageability of the process must be maintained throughout the process. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment").

20

Damages that can made into a formulaic calculation including punitive damages based on an appropriate ratio of punitive damages to the economic damages do not adversely affect the requirements for predominate and superiority of liability issues. *Sambrano v. United Airlines, Inc.*, 347 F.R.D. 155, 171, 173, 184 186 (N.D. Tex. 2024), appeal dismissed, 2024 WL 6083707 (5th Cir. 2024). In *Sambrano*, an employee's average wage rate could be used for individual damages. *Sambrano*, 347 F.R.D. at 186. Similar formulas could be used in the determination of lost rental value for the class in this case. While there is no formula to weigh the time saved by a single determination of liability in one case rather than in hundreds of cases, it is a factor in deciding the acceptability of a plan for trying individual damages after such a determination. *Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552, 579 (N.D. Ill. 2023).

## V. Appointment of Plaintiffs' counsel for class counsel

Plaintiffs' counsel move for appointment as class counsel per Rule 23(g). Plaintiffs' counsel have extensive experience in handling significant class actions, including those involving voucher tenants. The Declaration of Laura B. Beshara filed along with this motion sets out the Fed. R. Civ. P. 23(g)(1)(A) elements for Plaintiffs' attorneys. Declaration of Laura B. Beshara, pp. 1-7. Plaintiffs' counsel have the resources and commitment to represent Plaintiffs and the proposed classes diligently and zealously through the completion of litigation. *Id.* Accordingly, Plaintiffs' counsel should be appointed by the Court as class counsel.

## VI. Conclusion

Since Plaintiffs and the class members have standing and the Rule 23 elements of class certification are met for both proposed classes, the Plaintiffs request that the motion for class certification be granted and the two classes certified.

Respectfully Submitted,

s/ *Laura B. Beshara*

Laura B. Beshara
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: laurabeshara@swbell.net

Lead Counsel for Plaintiffs

Michael M. Daniel
State Bar No. 05360500
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: daniel.michael@att.net

Attorneys for Plaintiffs

## Certificate of Conference

I certify that 1) Plaintiffs' counsel has complied with the meet and confer requirement in Local Rule CV-7(h) concerning this motion and that 2) Defendants are opposed to this motion. On August 7, 2025, Plaintiffs' counsel held a conference with counsel for Defendants by Zoom meeting on the subject of this motion. Counsel for Defendants both stated their opposition to this motion during this conference. No agreement could be reached as Defendants are seeking to have the case dismissed and do not think class certification is appropriate.

s/ Laura B. Beshara
Laura B. Beshara
Lead Attorney

22

**Certificate of Service**

I certify that on September 5, 2025, I electronically filed this document with the Clerk of the U.S. District Court for the Eastern District of Texas using the electronic case filing system. This was also the method of service of this document upon counsel for the other parties in this case.

s/ Laura B. Beshara<br>
Laura B. Beshara<br>
Lead Attorney

23