**IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DEWANNA JOHNSON *ET AL.*** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:25-CV-00418** |
| | § | |
| **PROVIDENCE HOMEOWNERS** | § | **JURY DEMAND** |
| **ASSOCIATION, INC *ET AL.*** | § | |
| | § | |
| ***Defendants*.** | § | |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S MOTION FOR CLASS
<u>CERTIFICATION</u>**

Defendants Providence Homeowners Association, Inc. ("PHOA") and FirstService

Residential Texas, Inc. ("FirstService") (collectively "Defendants") respectfully file this joint

response to Plaintiff's Motion for Class Certification ("Plaintiffs' Motion") (Doc. # 37) and would

respectfully show the Court the following:

**TABLE OF CONTENTS**

I.     Summary.................................................................................................................... 1

II.    Background Facts..................................................................................................... 2

III.   The Standard Applicable to Class Certification.................................................. 4

IV.    Arguments................................................................................................................ 5

   a.   Plaintiffs' Motion should be denied because Plaintiffs failed to support their arguments with admissible evidence. ........................................................................................ 5

   b.   Plaintiffs' definitions of the two proposed classes is overbroad and uncertain. ................ 6

   c.   The Court should deny class certification to the Damage Class because Plaintiffs cannot meet the numerosity requirement. ......................................................................... 8

      i.    Plaintiffs cannot establish numerosity because joinder of all Black/Female Section 8 Voucher holders is not impracticable........................................................................ 9

      ii.   Plaintiffs have not met the predominancy requirements of Fed. R. Civ. P. 23(b)(3) for their Damages Class. ................................................................................................ 12

      iii.  Class action is not the superior means of adjudicating the claims................................ 16

   d.   The Injunctive Relief Class should be denied because Plaintiffs cannot meet all the elements of Rule 23............................................................................................................ 17

      i.    Plaintiffs' proposed class representatives lack standing to seek an injunction. ............ 17

      ii.   Plaintiffs cannot establish numerosity because joining all those who filed a HUD complaint is not impracticable............................................................................................ 20

      iii.  Ms. Johnson and Ms. Nathan do not possess the same interest and did not suffer the same injury as all the class members and have a fundamental conflict. .............................. 21

   e.   Plaintiffs cannot meet the requirements of Rule 23(b)(2) for the Injunctive Relief Class. 23

      i.    Plaintiffs cannot demonstrate that putative class members suffered essentially the same harm, which negates any claims for class wide remedy. ...................................................... 24

      ii.   The Section 8 Prohibition is unenforceable; thus injunctive relief is moot, and class certification is inappropriate. ........................................................................................... 25

      iii.  Monetary damages predominate rendering class wide injunctive relief improper. ...... 26

      iv.   The class wide injunctive relief sought is not sufficiently specific. ............................. 27

V.     Additional Specific Objections to Evidence ...................................................... 28

VI.    Conclusion ............................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385 (5th Cir. 1980) ................................................ 29

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ...................................................... 28

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................................. 4

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-32 (1st Cir. 1985) ........................................ 12

*Berger v. Compaq Comput. Corp.*, 257 F.3d 475 (5th Cir. 2001) .................................................... 23

*Burrell v. Crown Cent. Petroleum, Inc.*, 197 F.R.D 284 (E.D. Tex. 2000) .................................... 16

*Carter v. Loc*, 138 F.4th 164 (5th Cir. 2025) .................................................................................... 29

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) .............................................................. 18

*Chavez v. Plan Ben. Serv., Inc.*, 108 F.4th 297 (5th Cir. 2024) ...................................................... 19

*Chavez v. Plan Benefits Servs., Inc.*, 957 F.3d 542 (5th Cir. 2020) ................................................. 4

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ............................................................................ 20

*Cormier v. Scribe Media, LLC*, No. 1-23-CV-00647-DAE, 2024 U.S. Dist. LEXIS 189099 (W.D. Tex. Oct. 16, 2024) ........................................................................................................ 10

*Decorte v. Jordan*, 497 F.3d 433 (5th Cir. 2007) ............................................................................ 28

*Fleming v. Travenol Lab'ys, Inc.*, 707 F.2d 829 (5th Cir. 1983) ..................................................... 11

*Hill v. Enchantment Hotels, Inc.*, 2024 U.S LEXIS 124844 (N.D. Tex 2024) .............................. 28

*Hum v. Dericks*, 162 F.R.D. 628 (D. Haw. 1995) ............................................................................ 13

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) .................................................................... 10

*Jaynes v. United States*, 69 Fed. Cl. 450 (Fed. Cl. 2006) ................................................................ 13

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007) .................................................... 6

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ........................................... 10

*Novella v. Westchester City*, 661 F.3d 128 (2d Cir. 2011) ................................................................ 9

*Pederson v. La. State Univ.*, 213 F.3d 858 (5th Cir. 2000) ............................................................... 9

*Rosales v. Dep't of the Army*, No. 1:23-CV-00440-DAE, 2025 U.S. Dist. LEXIS 90755 (W.D. Tex. May 12, 2025) ............................................................................................................. 11

*Sambrano v. United Airlines, Inc.* 347 F.R.D. 155 (N.D. Tex. 2024) ............................................. 17

*Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414 (5th Cir. 2023) ................................................ 4

*Torres v. S.G.E. Mgmt., LLC,* 838 F.3d 629 (5th Cir. 2016) ........................................................... 14

*Unger v. Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005) ...................................................................... 4

*United States v. Hays*, 515 U.S. 737 (1995) ..................................................................................... 19

*Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496 (5th Cir. 2004) .......................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................................... 5

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) .............................................. 9

**Rules**

FED. R. CIV. P. 23(a) ............................................................................................................................ 4

FED. R. CIV. P. 23(b) ........................................................................................................................... 4

FED. R. EVID. 602 ................................................................................................................................ 6

FED. R. EVID. 602, 701 ...................................................................................................................... 30

**Regulations**

24 CFR § 100.600(a)(2)(i) ......................................................................................................... 13

## I.    Summary

Plaintiffs' Motion should be denied. Defendants object to the evidence submitted by Plaintiffs on hearsay and other grounds, and Defendants request that the Court deny Plaintiffs' Motion on this independent basis.

Subject to Defendants' objections, Plaintiffs have failed to establish the requisite elements of Rule 23(a) and (b) with admissible evidence. Defendants provide numerous additional legal and factual arguments and reasons below for denial of the Motion, including contesting the necessary elements of Rule 23(a), Rule 23(b), Plaintiffs' lack of standing, and fundamental problems with Plaintiffs' proposed class definitions.

Further, to the extent that Plaintiffs may be permitted to offer evidence at an evidentiary hearing to try to meet their burden to establish the elements necessary under Rule 23(a) and (b), Defendants also request an evidentiary hearing.

Indeed, on October 14, 2025, FirstService issued three subpoenas (attached to this response as Exhibit 1) to the three relevant housing authorities that placed Section 8 Voucher holders in Providence Village. These subpoenas request relevant information that would show the number of Section 8 Voucher holders along with their race and addresses. In addition, these subpoenas would request the number and identification of the landlords who leased rental units to Section 8 Voucher. Defendants have currently served one of the subpoenas and are in the process of serving the other two. If the Court does not deny Plaintiffs' Motion on the briefing, Defendants respectfully submit and request that the Court afford Defendants the time necessary to obtain response to these subpoenas and to submit related evidence in opposition to Plaintiffs' Motion.

## II.    Background Facts

In June of 2022, Defendant Providence Homeowners Association, Inc. ("PHOA"), through a vote of its Board, enacted a new set of rental rules regulating the leasing of rental units in providence Village, Texas (the "Rental Rules."). One of the many new rules precluded a landlord from leasing a home to a tenant using a Section 8 Voucher as a form of payment (the "Section 8 Prohibition").  After the Rental Rules were filed with the county clerk, PHOA notified landlords and tenants in Providence Village that it would not enforce the Section 8 Prohibition for 90 days (the "90 Day Grace Period").

Soon after the enactment of the Rental Rules, 51 persons filed complaints with HUD and HUD began an investigation of the Board's enactment of the Rental Rules. Thereafter, the U.S. Department of Housing and Urban Development ("HUD") and PHOA and its property management company, FirstService, agreed to stay the Section 8 Prohibition.

Later, in 2023, the Texas legislature enacted a new law banning regulations like the Section 8 Prohibition and PHOA removed it from the Rental Rules. Despite Plaintiffs' claims of enforcement and implementation against tenants, Defendants deny and dispute that the Section 8 Prohibition was ever enforced or implemented against any landlord or tenant living in Providence Village by fine or otherwise.

Subsequently, PHOA enacted new rental rules in 2024, which included a twenty-five (25%) cap on the amount of rental units in Providence Village (the "2024 Rental Rules").

In 2025, HUD issued a determination of cause and charge of discrimination against PHOA and FirstService. The Charge found reasonable cause for racial discrimination based on the enactment of the Section 8 Prohibition. The Charge found no reasonable cause for discrimination based on national origin, sex, familial status, or disability. The Charge did not make any reasonable

cause findings on the motivations for the enactment of the 2024 Rental Rules. The Charge was referred to the Department of Justice; however, the referral was later withdrawn and no case was filed by DOJ on behalf of those who filed complaints.

Instead, a group of seven Plaintiffs filed suit on behalf of themselves and seeking class certification on behalf of two proposed classes. Plaintiffs allege they are Section 8 Voucher holders who lived in Providence Village and were discriminated against by the enactment and enforcement of the Section 8 Prohibition. Plaintiffs bring both disparate treatment and disparate impact claims against Defendants based on race and sex.

In addition, Plaintiffs in this case bring claims under Section 3617 of the Fair Housing Act asserting claims of retaliation and hostile housing environment. These claims rest on alleged social media posts made by residents in Providence Village, which allegedly created a racially hostile environment and/or were harassing and threatening. Plaintiffs claim that Defendants allowed these social media posts and racial hostility to fester causing a number of Section 8 Voucher holders to leave the neighborhood and/or emotional distress. Plaintiffs likewise claim that Defendants' failure to act was retaliatory.

Two of the Plaintiffs—Ms. Johnson and Ms. Nathan—are proposed class representatives who allege that they are Female and Black and formerly received Section 8 Vouchers to pay for rental units in Providence Village. After enactment of the Rental Rules, Ms. Johnson allegedly decided to purchase her home and remains in Providence Village. Ms. Nathan alleged she was forced to leave Providence Village.

On September 5, 2025, Plaintiffs filed this Motion for Class Certification. Plaintiffs seek to certify two distinct classes: (1) a proposed class of Section 8 Voucher holders seeking damages (the "Damages Class"); and (2) a proposed class of all aggrieved persons affected by the

3

Defendants' conduct and who seek injunctive relief against the Defendants (the "Injunctive Relief Class"). Plaintiffs did not limit their proposed classes to those who filed a HUD complaint.

### III.     The Standard Applicable to Class Certification

A class action lawsuit is governed by Federal Rule of Civil Procedure 23. FED. R. CIV. P. 23(a). It has four primary requirements, which are numerosity, commonality, typicality, and adequacy of representation. *Id.*

In addition, there are specific requirements for the different types of class actions found in Rule 23(b). FED. R. CIV. P. 23(b). Generally, for classes seeking damages, these requirements are referred to as "predominance" and "superiority." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). Simply put, "[c]ommon questions must predominate over any questions affecting only individual members, and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations omitted).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named partes only." *Sampson v. United Servs. Auto. Ass'n*, 83 F.4th 414, 418 (5th Cir. 2023). Thus, district courts must "rigorously" consider the class action prerequisites, especially because improper certification "can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *Chavez v. Plan Benefits Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020).

The plaintiff must affirmatively prove that he complies with all the requirements of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Likewise, a plaintiff's request for class certification fails if any one of Rule 23's requirements are not met. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 n.1 (5th Cir. 2004).

4

Further, district courts are required to take a "close look" at the parties' claims and evidence in making its Rule 23 decision. *Unger*, 401 F.3d at 321. "The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification." *Id.*

To assist the court in this process it may allow controlled discovery at the certification stage. *Unger*, 401 F.3d at 321. Further, the district court must detail with "sufficient specificity how the plaintiff has met the requirements of Rule 23." *Vizena*, 360 F.3d at 503. Further, the district court must only consider admissible evidence when making its decision. *Unger*, 401 F.3d at 319.

## IV.    Arguments

Plaintiffs have wholly failed to meet their burden to establish the any of necessary requirements of Rule 23(a) and (b) and, thus, the Court should deny their Motion.

### a.  Plaintiffs' Motion should be denied because Plaintiffs failed to support their arguments with admissible evidence.

Initially, the Court should deny Plaintiffs' Motion because Plaintiffs have wholly failed to support their Motion with admissible evidence. The Plaintiffs have the burden to establish (not merely allege) the Rule 23 requirements and must do so with admissible evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (burden on plaintiff); *Unger v. Amedisys Inc.*, 401 F.3d 316, 319 (5th Cir. 2005) (holding "that a careful certification inquiry is required and findings must be made based on adequate admissible evidence to justify class certification.").

Here, Plaintiffs' Motion fails to meet this burden. Indeed, Plaintiffs Motion merely relies upon Plaintiffs' allegations in Plaintiff's Amended Complaint and hearsay found in the HUD Charge (Exhibit 1) and HUD Final Investigative Report (Exhibit 2). Defendants' object that this is all inadmissible hearsay and/or double hearsay. *See* FED. R. EVID. 602, 701, and 802. Further, Plaintiffs Motion relies upon an affidavit of Plaintiffs' counsel, which is also clearly self-serving hearsay. Plaintiffs cite to no other evidence. As set forth further below, this evidence is not

5

admissible and Defendants object to it. The Court should deny Plaintiffs' Motion for this independent reason alone.[1]

### b. Plaintiffs' definitions of the two proposed classes is overbroad and uncertain.

The Fifth Circuit has held that there is an implicit requirement set forth in Rule 23: "[f]or class certification to succeed under Rule 23, the class 'must be adequately defined and clearly ascertainable.'" *Phillips*, 2023 U.S. App. LEXIS 1518 at *5; *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).

"To be ascertainable, the class must be susceptible to a precise definition to properly identify those entitled to relief, those bound by the judgment, and those entitled to notice." *Phillips*, 2023 U.S. App. LEXIS 1518 at *5 (internal citations omitted). "The order defining the class should avoid subjective standards (*e.g.*, a plaintiff's state of mind) or terms that depend on resolution of the merits (*e.g.*, persons who were discriminated against)." *Id.* Ultimately, "the touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.*

Here, Plaintiffs seek to certify a Damages Class that includes: "voucher tenants who reside or resided in PHOA at the time of the enactment of the Rules and were injured by the Defendants' policies and actions for whom an award of damages is sought." Plaintiffs' Motion, pp. 13-14.  This proposed class is not adequately defined – but it is instead nebulous and ambiguous. Initially, this definition is too broad: it includes *all* Section 8 Voucher holders who reside or resided in PHOA at the time of the enactment of the Rules **regardless of race or sex**, including any White Section 8 Voucher holders and Hispanic Section 8 Voucher holders. Importantly, however, *all of Plaintiffs alleged claims are based on racial and/or sex based discrimination*. *See* Plaintiffs' Amended

---

[1] Defendants additional arguments in this Response are made subject to and without waiving Defendants' objections to the purported evidence submitted by Plaintiffs in support of Plaintiffs' Motion.

Complaint. If Plaintiffs considered female sex based discrimination, of course, male Section 8 Voucher holders do not fall within this class (or vice-versa). Thus, not all Section 8 Voucher holders qualify.

In addition, Plaintiffs' proposed Damages Class includes all Section 8 Voucher holders who were "injured." Yet, this is overbroad and creates uncertainty because this is inherently subjective depending on the individuals and how they reacted to the issues in this case. However, there is a clearly an objective standard: did the Section 8 Voucher holder file a complaint with HUD? Plaintiffs ignore this and attempt to seek class certification for individuals who did not even file a HUD complaint and allege that they were injured.

Further, the manner in which Plaintiffs' attempt to define the class is unclear in other respects: does Plaintiffs' proposed class include (a) only such Section 8 Voucher holders that were living in Providence Village at the time of the enactment or (b) does it also include any Section 8 Voucher tenant who lived in Providence Village at any time since the enactment? If the latter was intended by Plaintiffs, the definition is too broad for this additional reason; only those affected by the enactment of the Rental Rules would potentially qualify to bring a disparate treatment and disparate impact claim against Defendants based on the enactment (and alleged enforcement) of the Rental Rules in June of 2022.

As to the Injunctive Relief Class, this proposed class "is defined as a Rule 23(b)(2) class of all aggrieved persons who as a result of the challenged voucher ban, rental restrictions impacting voucher tenants, and the racial hostility have suffered adverse effects because of Defendants' discrimination based on race or sex." Plaintiffs' Motion, p. 4-5. "This class includes the 51 HUD complainants, who include 40 voucher tenants, eleven PHOA homeowners who leased homes to voucher tenants, and 4 PHOA residents." *Id.* p. 5. "This class *also includes others who were injured*

*by Defendants actions but did not file a HUD complaint*, including (1) other voucher tenants who live or lived in PHOA during the voucher ban and rental restrictions and (2) other PHOA owners who lease or leased their homes to voucher tenants during the ban and rental restrictions." *Id.* (emphasis added).

Plaintiffs' proposed Injunctive Relief Class is also too broad, nebulous, and incapable of precise definition. It is conceivably without limit in the context of all "others" who "were injured by Defendants' actions but did not file a HUD complaint. Indeed, Plaintiffs' proposed class opens the door to including every single person who lived in Providence Village since June of 2022 and believes that they were injured or will be injured. There is no specificity except that they presumably (a) had to have lived in Providence Village (or leased property in Providence Village to a Section 8 Voucher holder) at some point between June of 2022 and the present date; and (b) believe that they were injured. As worded, neither Plaintiffs nor Defendants nor the Court can know who is within this class because we do not know who allegedly suffered some injury from Defendants' conduct, which is clearly a subjective element and which the Court should avoid.

Accordingly, Plaintiffs' two proposed classes are ambiguous and not sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member or not, and the Court should deny Plaintiffs' Motion on this independent basis.

      **c.** **The Court should deny class certification to the Damage Class because Plaintiffs cannot meet the numerosity requirement.**

To the extent that the Court considers the purported evidence submitted by Plaintiffs or holds an evidentiary hearing to consider the Rule 23(a) and (b) requirements, Defendants raise the following additional arguments to contest Plaintiffs' proposed class certification of the Damages Class.

### i. Plaintiffs cannot establish numerosity because joinder of all Black/Female Section 8 Voucher holders is not impracticable.

The first listed prerequisite to class certification under Rule 23(a) is "numerosity." The numerosity requirement's central idea is that joinder is impracticable (although not necessarily impossible). *Novella v. Westchester City*, 661 F.3d 128, 137 n.14 (2d Cir. 2011).

Generally, a plaintiff must "show that it is extremely difficult or inconvenient to join all the members of the class." *Jaynes,* 69 Fed. Cl. at 454. A plaintiff must demonstrate evidence of the number of purported class members. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Courts must not focus on sheer numbers alone. *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000). Rather, assessing numerosity also entails consideration of "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman,* 651 F.2d at 1038. This requirement must be decided on a case-by-case basis. *Teta v. Chow (In re TWL Corp.)*, 712 F.3d 886, 895 (5th Cir. 2013).

While not dispositive, courts in the Fifth Circuit generally recognize that a proposed class between 100 to 150 members creates a presumption of numerosity. *Teta,* 712 F.3d at 895 (noting that "a putative class with only 130 members already might present a close question as to numerosity, depending on the particular circumstances of the case."); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (noting 100 to 150 members is within the range); *Boykin v. Georgia-Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (finding that numerosity requirement would not be met by a class with 20 members but was met by a class with 317 members); *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (numerosity established by over 580 members); *Cormier v. Scribe Media, LLC*, No. 1-23-CV-00647-DAE, 2024 U.S. Dist. LEXIS 189099, at *6 (W.D. Tex. Oct. 16, 2024) (numerosity established by 90 members).

"The mere allegation that the class is too numerous to make joinder practicable, by itself, is not sufficient to meet this prerequisite." *Fleming v. Travenol Lab'ys, Inc.*, 707 F.2d 829, 833 (5th Cir. 1983). The failure to submit evidence to indicate the number of class members is fatal to the numerosity element. *Rosales v. Dep't of the Army*, No. 1:23-CV-00440-DAE, 2025 U.S. Dist. LEXIS 90755, at \*14 (W.D. Tex. May 12, 2025).

Plaintiffs' Motion argues that the numerosity element is supposedly met based on two premises: (1) that over 40 voucher tenants filed a HUD charge; and (2) that 165 voucher tenants resided in Providence Village as of June of 2022. Plaintiffs' Motion, p. 17. Plaintiffs rely primarily on the HUD Charge to substantiate this numerosity argument, which contains an estimate of the number of Section 8 Voucher holders residing in Providence Village in 2022, which was 2-5% of the total homes. *Id.*

Plaintiffs' argument that it has established numerosity should be rejected. Initially, Plaintiffs have wholly failed to submit any admissible evidence to substantiate their claim of numerosity, relying solely on their pleadings and the alleging findings in the HUD Charge and FIR. This is legally insufficient. Without admissible evidence of an actual and sufficient quantification of the proposed class members, Plaintiffs have failed to meet their burden. *See Rosales*, 2025 U.S. Dist. LEXIS 90755 at \*14 (holding that the plaintiffs' failure to submit evidence of number of proposed class members was fatal to motion for class certification).

Further, the proposed class of Section 8 Voucher holders living in Providence Village does not meet the numerosity requirement. At best, Plaintiffs have identified 40 members who filed a HUD complaint. Forty class members is simply not enough to meet the presumption of numerosity within the Fifth Circuit. *Mullen*, 186 F.3d at 624.

Additionally, while Plaintiffs argue that there are more than 40 proposed class members because of the number of additional householder members (purportedly increasing the number by an additional 90 persons to 130 people), this argument is not supported by any admissible facts or evidence. The only purported "evidence" submitted by Plaintiffs is a passing conclusion in the HUD Charge that there are "at least twelve additional adult household members and seventy-eight minor children of Complainants." HUD Charge, p. 25. However, HUD's Charge does not identify if these individuals reside with a Section 8 Voucher holder (as opposed to residents or landlords). Indeed, the actual number of household members who lived with the Section 8 Voucher holders is not provided and is purely speculative.

Furthermore, the number of proposed class members is not dispositive. Instead, this Court must also consider whether it is ***impracticable*** to join all them to this case.

The opinion in *Andrews v. Bechtel Power Corp.* is instructive. 780 F.2d 124, 131-32 (1st Cir. 1985). The Court of Appeals affirmed the lower court's refusal to certify the class because the members of the class came from the same small geographic area – all living in southeastern Massachusetts and were identifiable and therefore they could be easily joined. *Id.*

In the case at bar, both of these factors are met. Initially, the Section 8 Voucher holders that were allegedly harmed by the enactment of the Rental Rules all lived in or remain in Providence Village, Texas. While some of the Section 8 Voucher holders living in Providence Village may have moved away, the current address and location of these individuals can be ascertained. Further, it is relatively easy to identify the Black/Female Section 8 Voucher holders who resided in Providence Village based on the records from the housing authorities that placed them in Providence Village. The three housing authorities know who they placed in Providence Village and who was living with them, and this information is being requested by Defendants. Indeed, the

11

HUD Charge itself lists 40 of the Section 8 Voucher holders and their addresses. Thus, the names and addresses of many of the Section 8 Voucher holders are already known and the rest clearly can be readily ascertained.

Given the relatively limited number of voucher holders, their geographic closeness, and the fact that many of the names of the Black Section 8 Voucher holders are already known or can be readily ascertained, it is not impracticable to join them in this lawsuit, and Plaintiffs cannot meet their burden to demonstrate otherwise. *See Jaynes v. United States*, 69 Fed. Cl. 450, 454-55 (Fed. Cl. 2006) (finding that a class with as many as 258 putative members failed to satisfy numerosity because the class members all had worked in the same area and easily could be identified and located); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) ("Because most of the proposed class members reside in Hawaii and are identifiable through Surgicare records, the court finds that Hum has not carried his burden of showing that joinder is impracticable [for proposed class of 200].").

### ii. Plaintiffs have not met the predominancy requirements of Fed. R. Civ. P. 23(b)(3) for their Damages Class.

Plaintiffs' request for a certified class comprised of voucher recipients seeking monetary damages fails to meet the predominance requirements of Rule 23(b)(3). Under this rule, Plaintiffs must demonstrate that common questions of law and fact predominate over any question affecting only individual members. *See Maldanado*, 493 F.3d at 525; *see also Allison*, 151 F.2d at 420.

The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and the goal is to prevent the class from degenerating into a series of individual trials. *See Torres v. S.G.E. Mgmt., LLC,* 838 F.3d 629, 636 (5th Cir. 2016). The predominance inquiry is more demanding than the commonality requirement of Ruel 23(a) and requires courts to consider how a trial would be conducted if a class were to be certified. *See*

12

*Maldando*, 893 F.3d at 525. Further, the analysis requires an understanding of the claims, defenses, facts and substantive law presented in the case. *See Allison*, 151 F.3d at 419.

Here, Plaintiffs have two distinct theories of the case concerning Defendants' liability. One theory is that the enactment of the Section 8 Prohibition caused voucher tenants to suffer injuries, including the loss of housing, moving related expenses, and emotional distress. The other theory is that the Defendants failed to properly address or prevent third-party harassment, which exposed voucher tenants to a racially hostile environment, which also caused emotional distress.

Each theory requires an inquiry into facts specific to each class member, including (i) whether, when, and why the class member left or remained in their rental property, and (ii) the nature, duration, frequency and reaction to the any harassment or hostility experienced by the class member.

Conversely, Defendants' potential defenses to each claim turn on highly individualized facts. For example, Plaintiffs' hostile environment claims "depend[] upon the totality of the circumstances." 24 CFR § 100.600(a)(2)(i). "Factors to be considered to determine whether hostile environment harassment exists include, but are not limited to, the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." *Id*

Thus, the defense of Plaintiffs' class claims for harassment and hostile environment turn on whether (i) the Defendant or a third-party is alleged to have committed the harassment, (ii) whether Defendant exercised control over the person allegedly committing the harassment, (iii) whether Defendants had actual knowledge of the harassment, (iv) Defendants' purported response (or lack thereof) to each purported act of harassment, (v) the frequency of the class members' exposure to the harassment, and (vi) where the harassment occurred. *See id.*

A class wide finding that hostile environment existed or that Defendant did not respond to harassment claims does not resolve the aforementioned fact questions necessary for a liability finding against Defendants. The same is true for retaliation, which contains a number of individualized inquiries.

Further, Plaintiffs allege that putative members of this class suffered monetary damages, including moving expenses, out of pocket expenses, and emotional distress from racially discriminatory threats and hostile environment. *See* Plaintiffs' Motion, p. 14 [Doc. 37]. As noted above, fact specific questions predominate all facets of Plaintiffs' class claims for monetary relief.

For example, the question of liability does not stand or fall on whether the Defendants' Section 8 Prohibition is deemed inherently discriminatory, but must also be based on whether the enactment (and alleged enforcement) proximately caused class members (*i.e.,* voucher holders) to lose or be denied housing. *See* 42 U.S.C. § 3604(a) and (b).

Here, the facts demonstrate that this is a distinctively case-specific question, as only 19 of the purported 145 voucher recipients (13%) actually left their rental property in the three-year period after the enactment of the rules. *See* Amd. Compl., Ex. 2, p. 19 [Doc. 11-2]. In other words, 87% of the voucher holders – the putative class members—did not suffer a loss of and/or were not denied rental housing due to the prohibition. This highlights the need for case specific factual inquiries into why certain class members left or remained in their rental property.

Even among the 19 voucher holders that ended their leases, fact issues predominate. For instance, unique facts concerning when the voucher tenants ended their lease may determine their ability to prove liability. Voucher tenants that terminated their lease *after* the voucher prohibition was either rescinded by Defendant PHOA or outlawed by the Texas Legislature, would have a

14

substantially difficult time proving a causal link between their lease termination and the void prohibition.

Based on the foregoing, Plaintiffs' assertion that a class wide finding on liability can be made is untenable, as too many case specific fact inquiries are necessary to establish that the Defendant caused voucher holders to be denied housing, to experience harassment, or to be exposed to a hostile environment.

Plaintiffs' proposal to conduct a two-part trial, with liability issues tried class wide first, will not avoid the need to delve into the specific circumstances of each class member. This would result in a series of mini liability trials negating the purported benefit of a class certification. *See Burrell v. Crown Cent. Petroleum, Inc.*, 197 F.R.D 284 (E.D. Tex. 2000) (employment class action denied where compensatory and punitive damages sought turned on case specific findings causing individual issues to predominate over facts common to the class).

Similarly, the extent and nature of the alleged injuries suffered by the putative class is too diverse and case specific to support a class certification. Here, Plaintiffs seek class wide compensatory damages for moving expenses, which will differ among class members depending on a myriad of facts, including (i) whether they actually moved, (ii) hired movers, or (iii) incurred other costs.

Further, Plaintiffs seek class wide monetary relief for emotional distress. As noted above, such damages cannot be determined simply upon a finding that the Defendants' rules were discriminatory—a specific inquiry into the cause of the distress and each claimant's mental state, is required *See Decorte,* 497 F.3d at 442; *see also Hill*, 2024 U.S LEXIS 124844 at *3.

In sum, there are too many individualized inquiries that predominate over the common issues identified by Plaintiffs and, thus, denial is proper.

### iii.   Class action is not the superior means of adjudicating the claims.

Plaintiffs must prove that class certification is superior to other available methods for fairly and efficiently adjudicating claims. FED. R. CIV. P. 23(b)(3). As discussed in section c.2 of this Response above, individual fact issues concerning both Plaintiffs' liability and damages claims predominate this matter and render class certification an inferior means of adjudication the claims negating this requirement.

"The greater the number of individual issues, the less likely superiority can be established. *See Sambrano v. United Airlines, Inc.* 347 F.R.D. 155, 185 (N.D. Tex. 2024); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996).  In contemplating superiority of a class action, Court's consider the difficulty in managing the class action. *See Sambrano,* 347 F.R.D. at 185 (proposed employment class denied where the cause, nature, and extent of the putative class members injuries were too diverse and individual fact issues predominated).

The primary benefit of class adjudication—judicial efficiency and economy—is not met here. *See Sambrano*, 347 FRD at 185. The Damages Class contains diverse claims and injuries which renders the class adjudication unmanageable.

As detailed above, the liability and damages issues amongst the putative class members require individualized inquiries concerning (i) whether or when class members left their rental property, (ii) whether class members were exposed to alleged online harassment, (iii) the extent and nature of alleged emotional distress suffered by each proposed class members, and (iv) the extent and nature of alleged out pocket expenses and monetary losses. The proposed class members cannot make out a case for housing discrimination or hostile environment without addressing these individualized inquiries, and no single liability or damages question applies class wide.

As contemplated, the Plaintiffs proposed classes would necessarily devolve into – according to Plaintiffs—a hundred mini trials as the putative class members attempt to state their prima facie claims for liability and damages. This completely frustrates the purpose of class adjudication. *See* Fed. R. Civ. P. 23(b)(3). The superior method for adjudication is clearly for those aggrieved persons to be added to this case as Plaintiffs or to file their own individual cases.

### d. The Injunctive Relief Class should be denied because Plaintiffs cannot meet all the elements of Rule 23.

To the extent that the Court considers the purported evidence submitted by Plaintiffs and/or holds an evidentiary hearing to consider the Rule 23 requirements, Defendants raise the following additional arguments to contest Plaintiffs' proposed class certification of the Injunctive Relief Class.

### i. Plaintiffs' proposed class representatives lack standing to seek an injunction.

In addition to the requirements of Rule 23, to succeed on a motion for class certification, a class of plaintiffs must have Article III standing on their claims. *James*, 254 F.3d at 562.. In the class action context, for a plaintiff to have standing, that plaintiff must be a member of the class they seek to represent. *Id.* "If the litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other member of the class." *Id.*

The three normal requirements for standing are: that there is (a) an injury in fact that is concrete and particularized; (b) actual or imminent; and (c) it must be likely that the injury will be redressed with a favorable decision. *United States v. Hays*, 515 U.S. 737, 742-43 (1995). Courts must be cognizant not to dispense standing "in gross" in a class-action context—instead courts must ensure that plaintiffs "demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)

17

Recently, the Fifth Circuit in *Chavez v. Plan Ben. Serv., Inc.*, set forth the tests for standing for class certification. 108 F.4th 297, 307 (5th Cir. 2024). Recognizing that the U.S. Supreme Court has not yet taken a definitive approach, the Fifth Circuit set out two approaches referred to as the "Class Certification Approach" and the "Standing Approach."

Under the first approach, courts examine whether the proposed class representatives have normal Article III standing for each claim and form of damage they seek to bring. If so, the courts move on to an analysis of the normal Rule 23 requirements. *Id.* at 312. Under the second approach, the Fifth Circuit has set forth three separate avenues for evaluating standing, which are summarized below:

- A court must analyze whether plaintiffs allege a harm that is unique to them, such that it would be unsuitable to permit other nonrelated harms in the same lawsuit.

- A court must analyze whether plaintiffs assert claims that implicates the same set of concerns than the unnamed class members.

- Finally, a court must consider whether plaintiffs and the other class members have the same interest and suffered the same injury.

*Chavez*, 108 F.4th at 307.

For those seeking injunctions, the plaintiff in a proposed class action must also show that "they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James*, 254 F.3d at 563. Past exposure to some illegal conduct is not sufficient for an injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Here, the two proposed class representatives – Ms. Johnson and Ms. Nathan – lack standing to assert the claims asserted by the Injunctive Relief Class. While each may potentially be able to support their allegations that they have an injury-in fact that is redressable by a monetary award (although Defendants deny and make no admission regarding the same), clearly neither of these

18

proposed class members qualify to act as representatives of the Injunctive Relief Class under the "Standing" approach.

Both Ms. Johnson and Ms. Nathan are alleged to be Section 8 Voucher holders living in Providence Village in June of 2022. Neither of them were homeowners in Providence Village at the time of the enactment; neither of them are landlords in Providence Village; and neither of them are merely homeowners alleged impacted by the Rental Rules.

Indeed, Ms. Johnson/Ms. Nathan have not suffered the same alleged harm as each of the groups of unnamed class members (landlords/homeowners) purportedly have suffered. Section 8 Voucher holders purportedly suffered a unique harm to them; they allegedly were discriminated on the basis of their race/sex and they seek monetary damages for such discrimination. The same is not true for landlords and homeowners living in Providence Village who, for example may have been harmed by losing rent losing interracial living arrangements.

Further, Ms. Johnson/Ms. Nathan's concerns are clearly different than landlords and homeowners/residents. While Section 8 Voucher holders may have an interest in leasing their property, landlords and homeowners/residents have many different interests because they own the homes in which they live in Providence Village. This distinction is important and it should not be ignored. A landlord and a homeowner cannot simply end their lease and walk away, unlike a renter using a Section 8 Voucher. Homeowners have vested long-term monetary interest in Providence Village that is lacking for Section 8 Housing vouchers.

Also, Ms. Johnson/Ms. Nathan do not have the same interest and did not suffer the same purported injury as the unnamed class members, as discussed directly above. Accordingly, under the "Standing" approach, the Court should reject that Ms. Johnson and Ms. Nathan have "standing" to assert the claims of the unnamed landlords/homeowners.

19

Furthermore, Ms. Johnson/Ms. Nathan lack standing to sue for an injunction in this case. Here, Plaintiffs have alleged a variety of injunctive relief that they seek against the Defendants. However, Ms. Johnson/Ms. Nathan cannot show that "they are likely to suffer future injury" because the Section 8 Prohibition has been completely mooted and is incapable of repetition because of the change in Texas law. Thus, Plaintiffs requests for an injunction will not prevent any future injury. *James*, 254 F.3d at 563. The past exposure to alleged discrimination is not sufficient to establish standing for an injunction. *Lyons*, 461 U.S. at 102.

Plaintiffs' Motion argues that they are seeking more than just an injunction as to the Section 8 Prohibition, arguing that the 2024 Rental Rules also prohibit Section 8 Vouchers and are discriminatory. The problem with this argument is it is not supported by the HUD Charge in this case: HUD did not find that the 2024 Rental Rules were enacted discriminatorily by the Board. Ex. 1, HUD Charge. More importantly, the 2024 Rental Rules apply across the board to all landlords and all renters, not merely to Section 8 Voucher holders, placing a 25% limit on the number of rental units in Providence Village. Plaintiffs' argument that they have standing to seek an injunction against these 2024 Rental Rules is without merit.

### ii. Plaintiffs cannot establish numerosity because joining all those who filed a HUD complaint is not impracticable.

Defendants incorporate their above arguments regarding specificity and numerosity regarding the Injunctive Relief Class. The Court should deny Plaintiffs' arguments for the same reasons.

Simply put, once the proposed class of Injunctive Relief Class is properly limited to only those who persons filed a HUD Charge and lived in Providence Village in June of 2022 (or leased property then to Section 8 Voucher holders), the number of proposed class members is insufficient to establish the numerosity requirement (being at most 145 people) in this case. The Plaintiffs can

20

easily join them to this Lawsuit or have them file their own separate lawsuits (as some have already done). (Case No. 4:22-cv-00598, *High Opportunity Neighborhood Realty, LP, v. Providence Homeowners Association, Inc. et al.;* Eastern District of Texas, Sherman Division).

### iii. Ms. Johnson and Ms. Nathan do not possess the same interest and did not suffer the same injury as all the class members and have a fundamental conflict.

The third requirement of Rule 23(a) is typicality. In order to meet the typicality requirement, "the claims or defenses of the parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3); *see Mullen*, 186 F.3d at 625.

This requirement of typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. *Forbush*, 994 F.2d at 1106. Stated differently, the class representatives must possess the same interest and suffer the same injury as the respective class members. *Gomez*, 200 F.R.D. at 582.  Plaintiffs have not met their burden on this point.

Similarly, the fourth requirement of Rule 23(a) is adequacy of representation. "To meet Rule 23 requirements, the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger*, 401 F.3d at 321.

Courts inquire into (1) the zeal and competence of the representatives' counsel; and (2) the willingness and ability of the class representatives to take an active role in and control the litigation and to protect the interests of absentees. *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (cleaned up). In addition, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Dukes*, 564 U.S. at 348-49. The

adequacy inquiry is also used to uncover conflicts of interest between the lead plaintiffs and the class they seek to represent. *Id.* 26.

In Plaintiffs' Motion, Plaintiffs also argue that Ms. Johnson and Ms. Nathan can also seek to represent the Injunctive Relief Class because the claims are typical and they meet the adequacy requirement. Plaintiff's Motion, pp. 11-12. However, neither of them possess the *same interest* and suffered *the same purported injury* as all the other class members and they have a glaring fundamental conflict as proposed representatives in this case.

As noted above, the injuries allegedly sustained by Ms. Johnson and Ms. Nathan are not the same as the alleged injury to landlords renting to Section 8 Voucher holders or homeowners who merely lived in Providence Village in 2022. Further, their interests are not aligned and do diverge in a number of important respects. One merely rents while the others own or leases property in Providence Village.

Indeed, there is a fundamental conflict in this case by Ms. Johnson/Ms. Nathan's attempt to represent this class: while Ms. Johnson/Ms. Nathan's seek the largest monetary award possible, those in the Injunctive Relief Class do not seek any award of monetary damages. Thus, those in the Injunctive Relief Class sought by Plaintiffs have no interest in the claims for monetary damages. Indeed, as landlords and homeowners are part of this class, it does not benefit them in any way to obtain a monetary award against Defendants (that they do not share) - and which the Injunctive Relief Class could indirectly be obligated to pay as association homeowners in the event of a final judgment that exceeds any available insurance coverage limit for the Defendants in this case. Additionally, while Ms. Johnson/Ms. Nathan may have an interest in seeking to have this Court enjoin the other Rental Rules, landlords and homeowners in PHOA likely do not have the same interest. Indeed, some of the latter may actually want to keep the Rental Rules to encourage

22

homeownership, discourage new leasing, and/or to prevent competition from other landlords.

Furthermore, landlords and homeowners do not necessarily have the same claims as Section 8 Voucher holders. Clearly, landlords and homeowners would not be able to assert, for example, a claim of disparate treatment, when they are not Black or Female nor were they discriminated against. The same holds true for the housing harassment and retaliation claims allegedly asserted by Plaintiffs. Both of these claims would require individualized inquiries into the treatment that the landlords/homeowners received after the enactment of the Rental Rules.

In sum, Plaintiffs have failed to meet their burden to demonstrate typicality and adequacy, and Plaintiffs' Motion should be denied.

### e. Plaintiffs cannot meet the requirements of Rule 23(b)(2) for the Injunctive Relief Class.

Even if a claimant meets the requirement of Rule 23(a), a putative class must provide proof sufficient to meet one of the three requirements stated in Rule 23(b), including evidence (1) that prosecuting separate actions would create inconsistent duties for the defendant or impair the rights of other class members, (2) that the defendant has acted in a manner applying to all class members, so that final injunctive relief is warranted, or (3) that the court finds questions of law or fact common to all class members predominate over individualized questions and that a class action is superior to other available methods of adjudication. *See* FED. R. CIV. P. 23(a) and (b)(1)-(3); *Maldanado,* 493 F3d. at 524; *Michael v. Workrise Techs., Inc.,* 2023 U.W. Dist. LEXIS 62163, *adopted* 2023 U.S. Dist. LEXIS 82541 (W.D. Tex. 2023).

Here, Plaintiffs contend that they have met the requirements under Rule 23(b)(2) for class wide injunctive relief, asserting that Defendants continue to act in a manner generally applicable to all putative class members. Plaintiffs' Motion, p. 12 [Doc. 37].

23

      **i. Plaintiffs cannot demonstrate that putative class members suffered essentially the same harm, which negates any claims for class wide remedy.**

Plaintiffs seek to certify an Injunctive Relief Class under Rule 23(b)(2) consisting of all aggrieved persons. This is improper.

First, the proposed class members were not harmed in essentially the same way as required. *See Maldanado*, 493 F.3d. at 524. Voucher holders *previously* living in the neighborhood allegedly suffered a loss of housing. In contrast, voucher holders *currently* living in the neighborhood have maintained their housing, and thus did not suffer the same harm. Similarly, the alleged harm suffered by landlords prevented from leasing homes to voucher recipients is the loss of rental income—a purely economic injury remedied by monetary damages—not injunctive relief. The loss of rental income is a substantially different injury than the alleged loss of housing purportedly suffered by certain voucher holders.

Moreover, to the extent Plaintiffs contend exposure to racial hostility and harassment is the same harm, this too differs substantially throughout the class. The nature, method, timing, and impact of the alleged hostility and harassment alleged depends on facts unique and specific to each individual class member.

To the extent the alleged acts of harassment and hostility were performed by different individuals, using different methods, inquiry into case specific facts are necessary. For example, much of the alleged harassment and hostility occurred through social media, and class members without social media accounts may not have been exposed to or experienced the purported racial hostility or harassment.

24

To determine whether a prospective class member experienced such harassment, and the nature of the harassment experienced requires a factual finding unique to each class member, which negates claims of a uniform harm.

Similarly, to the extent Plaintiffs' claim enactment of the Section 8 Prohibition supposedly *forced* class members to terminate rental leases early due to fear of fines and/or the sudden loss of housing, this too differs across the class. As noted, the Defendants never imposed fines or otherwise enforced the prohibition. For all relevant times, the prohibition was either under a grace period, under an agreed stay, rescinded, or void under Texas law. *See* Amd. Compl. 60 [Doc. 11].

Therefore, landlords who maintained or executed leases *after* the voucher prohibition became unenforceable cannot credibly claim that a fear of fines caused them to terminate voucher leases. Similarly, voucher tenant who maintained, or executed leases *after* the voucher prohibition became void cannot claim it caused them to terminate their leases. Thus, the unique facts concerning the timing of the termination and terms of the various leases significantly impacts the ability to prove causation and of the harm they purportedly suffered. This lack of uniformity among potential class members is fatal to their claim for an injunctive class action. *See* Fed. R. Civ. P., 23(b)(2).

### ii. The Section 8 Prohibition is unenforceable; thus injunctive relief is moot, and class certification is inappropriate.

Additionally, certification under Rule 23(b)(2) is improper where a majority of the class does not face future harm. *See Maldanado*, 493 F.3d at 525 (injunction on hospital from charging full prices to uninsured patients served "no purpose" where defendant previously instituted automatic discounts to uninsured patients).

As noted, the Section 8 Prohibition has been rescinded by Defendant PHOA and outlawed by the Texas Legislature for over two years. *See* Amd. Compl. ¶ 60, 61 [Doc. 11]. Moreover, based

25

on Plaintiffs' own pleadings, 126 of the 145 voucher recipients (86%) have remained in their rental properties since the enactment of the Section 8 Prohibition and other Rental Rules. *See* Amd. Compl., Ex. 2, p. 19 [Doc. 11-2]. Thus, contrary to Plaintiffs' assertions, the other Rental Rules have not denied or prevented voucher recipients from maintaining property or other putative class members from renting property to voucher recipients in the neighborhood. *See id.* Thus, Plaintiffs' request for injunctive relief enjoining the Section 8 Prohibition and other Rental Rules are moot as the Defendants have not and cannot reinstate a prohibition on rentals to voucher recipients.

### iii.    Monetary damages predominate rendering class wide injunctive relief improper.

In addition to injunctive relief, Plaintiffs also seek compensatory damages, including emotional distress damages. *See* Amd. Compl. ¶ 208, [Doc. 11]. In this Circuit, monetary damages are presumed to predominate 23(b)(2) classes unless the damages are incidental to the requested injunctive relief. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998). Monetary damages are incidental when they flow directly from the grant of class wide injunctive relief (such as a statutory fine), are easily computed by objective standards applicable to the entire class, and are not dependent on subjective differences of each class members circumstances. *See id.*

Emotional distress damages are not presumed available just because a claimant is a victim of discrimination. *See Decorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007); *see also Hill v. Enchantment Hotels, Inc.*, 2024 U.S LEXIS 124844 at *3 (N.D. Tex 2024) (discrimination claimant's claim for emotional distress denied in absence of evidence from claimant's counselor or psychologist).

To recover emotional distress damages, Plaintiffs must provide specific evidence of the nature and extent of the harm suffered. *See id.* This evidence would require an inquiry into facts specific to each class member, such as the cause of the distress (*i.e.*, loss of housing or alleged

harassment), and the specific impact on each class member. The putative class members' relief cannot be computed by an objective standard class wide, and it is dependent on subjective considerations unique to each class member. In short, the compensatory monetary relief sought predominate the injunctive relief, and support denial of class certification. *See Allison*, 151 F.3d at 417.

### iv.   The class wide injunctive relief sought is not sufficiently specific.

Every order granting injunction must be specific in its terms and must describe in reasonable detail the acts that are enjoined. *Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387-88 (5th Cir. 1980). Basic fairness requires that those enjoined receive *explicit* notice of precisely what conduct is outlawed." *Carter v. Loc*, 138 F.4th 164, 204 (5th Cir. 2025).  The injunctive relief sought here is not sufficiently specific.

Here, Plaintiffs' injunction requests are impermissibly broad, vague, and warrant a denial of the requested class certification.

Plaintiffs essentially request orders enjoining Defendants from engaging in "racial discrimination" or "violations of the FHA." However, the proposed injunctions <u>do not</u> state the explicit acts that are prohibited. Further, the proposed injunctions that require Defendants to take affirmative actions are equally vague. Plaintiffs propose injunctions requiring Defendant to monitor social media sites for harassing and hostile content and to enact unspecified rules to "end racial hostility." Plaintiffs provide no guidance as to how Defendants can comply with such injunctive orders. Would this require Defendants to monitor all social media sites used by residents and enact rules imposing fines on property owners for posts deemed inappropriate? Further, how do Defendants determine if a conflict between residents' concerns simple interpersonal animus versus a conflict involving racial animus violating federal housing laws?

27

Moreover, whether social media content is deemed hostile or harassing requires a factual inquiry unique to each class member, including whether the class member was exposed to the content, or whether the class member perceived the content to be hostile or offensive. The difficulty in explaining the nature and scope of the injunction relief Plaintiffs seek demonstrate that class wide injunction relief cannot be easily implemented, as individual issues overwhelm class cohesiveness. Thus, Plaintiffs cannot meet the specificity requirements for injunctive relief, and the 23(b)(2) class should be denied.

## V.    Additional Specific Objections to Evidence

By this Response, Defendants object to the purported "evidence" submitted by Plaintiffs in support of the Plaintiffs' Motion as hearsay on the ground that it presents unqualified and unreliable opinion testimony. *See* FED. R. EVID. 602, 701, and 802 (prohibiting hearsay; unqualified opinion testimony). Defendants object that the HUD Charge and the FIR are hearsay and contain hearsay within hearsay and should be stricken. *Id*. Additionally, Plaintiffs' affidavit of counsel is hearsay and should be stricken. *Id*.

## VI.    Conclusion

Defendants request that the Court deny Plaintiffs' Motion. In the unlikely event the Court does not deny Plaintiffs' Motion outright and wished to entertain an evidentiary hearing on Plaintiffs' Motion, Defendants request an oral hearing on the Motion for Class Certification and request that the Court consider the evidence currently sought by Defendants through its subpoenas and the arguments presented above and decide at a later date whether Plaintiffs can meet their evidentiary burden, and grant to Defendants any further relief to which they are justly entitled.

Respectfully submitted,

By: /s/ *Sarah R. Smith*_____
Sarah R. Smith

28

*Attorney-In-Charge*
Texas State Bar No. 24056346
Email: Sarah.Smith@dinsmore.com

David A. Talbot
Texas State Bar No. 24037580
Email: David.Talbot@dinsmore.com
JPMorgan Chase Tower
600 Travis St., Suite 7350
Houston, Texas 77002
Telephone: 346-293-7878
Facsimile: 346-293-7877

**ATTORNEYS FOR DEFENDANT PROVIDENCE   HOMEOWNERS ASSOCIATION, INC.**

/s/ *Roger L. McCleary*
Roger L. McCleary (SBOT: 13393700)
rmccleary@pmmlaw.com
James C. Burnett (SBOT: 24094025)
jburnett@pmmlaw.com
Max Wagner (SBOT: 24115914)
Mwagner@pmmlaw.com
Parsons McEntire McCleary PLLC
One Riverway, Suite 1800
Houston, Texas 77056
(713) 960-7315 (Telephone)
(713) 960-7347 (Facsimile)

**ATTORNEYS FOR DEFENDANT FIRST SERVICE RESIDENTIAL TEXAS, INC.**

29

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record has been served with the foregoing document though PACER, as authorized by the Federal Rules of Civil Procedure on this 17th day of October 2025:

Laura B. Beshara
State Bar No. 02261750
Daniel & Beshara, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Email: laurabeshara@swbell.net

Michael M. Daniel
State Bar No. 05360500
Daniel & Beshara, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Email: Daniel.michael@att.net

**Attorneys for Plaintiffs**

David A. Talbot Esq.
Sarah R. Smith, Esq.
Dinsmore
24 Greenway Plaza, Suite 1400
600 Travis Street, Suite 7350
Houston, Texas 77002
Email: *David.Talbot@dinsmore.com*
Email: *Sarah.Smith@dinsmore.com*

**Counsel for Respondent Providence Homeowners Association, Inc.**


*/s/ Roger L. McCleary*
Roger L. McCleary


3202572

30