**IN THE UNITED STATES DISTRICT COURT**
**THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **DEWANNA JOHNSON *ET AL.*** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CASE NO. 4:25-CV-00418** |
| | § | |
| **PROVIDENCE HOMEOWNERS** | § | **JURY DEMAND** |
| **ASSOCIATION, FIRSTSERVICE** | § | |
| **RESIDENTIAL TEXAS, INC.** | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' JOINT OBJECTIONS AND MOTION TO STRIKE THE EXPERT**
**OPINIONS OF DR. SARAH VINSON**

TO THE HONORABLE COURT:

Defendants, FirstService Residential Texas, Inc. ("FirstService") and Providence Homeowners Association, Inc. ("PHOA"), (collectively, "Defendants") respectfully and jointly submit this Joint Objections and Motion to Strike the Expert Opinions of Dr. Sarah Vinson ("Motion"), as follows:

## I.  INTRODUCTION AND SUMMARY OF MOTION

On December 12, 2025, Plaintiffs disclosed the Expert Report of Sarah Y. Vinson, MD ("Report," a true and correct copy of which is attached to this Motion as Exhibit A). Dr. Vinson is a forensic psychiatrist and consultant, in addition to her faculty and Chair responsibilities at the Morehouse and/or Emory Schools of Medicine. Plaintiffs engaged Dr. Vinson "to perform a review of the scientific peer-reviewed literature regarding the physical and psychological impacts that one *can face* after experiencing racial discrimination in person and online." Ex. A, Report, p.3 (emphasis added).

In her Report, Dr. Vinson reviews certain literature and offers the following summary opinion:

> In sum, while this review is far from exhaustive, there is ample scientific literature published in reputable peer-reviewed journals and texts that compellingly quantifies and characterizes a multitude of mental and physical harms from racial discrimination, such as that experienced by the plaintiffs and by the Black members of the proposed classes in this case, on the health of Black youth and adults.

("Opinion" – in the nature of a review per Dr. Vinson*) See* Ex. A, Report, p. 10. Dr. Vinson's deposition was taken in this case on April 6, 2026. A true and correct copy of excerpts from Dr. Vinson's deposition testimony in this case ("Depo.") are attached as Exhibit B-1 to this Motion.[1]

From Dr. Vinson's Report and her deposition testimony, it is clear Dr. Vinson's Opinion boils down to a conclusion that "scientific literature" indicates people, in general, ***may possibly*** experience mental and physical harm from racial discrimination. Dr. Vinson has made no attempt to apply her conclusion to the Plaintiffs or to the facts of this case and, indeed, she cannot do so given that it was not within the scope of her engagement. Practically speaking, Dr. Vinson's Opinion serves only as Plaintiffs' attempt to sidestep their burden to prove (among other things and without limitation), by a preponderance of the credible evidence (and the relevant and reliable evidence, with respect to expert opinion testimony), that ***each*** Plaintiff experienced mental or physical harm ***proximately caused*** by actionable racial discrimination by Defendants.

In sum, and without limitation, Defendants object that Dr. Vinson's Opinion, and her related testimony, is not relevant, it is conclusory, and it also does not meet the predicates for admissibility under Fed. Rules Evid. R. 702, as it will not help the trier of fact to understand the

---

[1] *See* Declaration of Roger L McCleary, attached to this Motion as Exhibit B and incorporated herein by reference in its entirety, including Exhibit B-1 to the same, for the limited purposes of this Motion. References in this Motion to page and line excerpts from the Depo. will be in a "page(s)/line(s)–page(s)/line(s)" format.  Dr. Vinson's Report was Exhibit 2 to the Depo.

evidence or to determine a fact in issue, and Dr. Vinson has not reliably applied the principles and methods from which her Opinion is a product to the facts of this case. Defendants further object that, to the unlikely extent it is determined that Dr. Vinson's Opinion and related testimony has any probative value in this case (which Defendants deny), any such value is substantially outweighed by the danger of confusion of the issues, misleading the jury, and unfair prejudice to Defendants.[2] Dr. Vinson's Opinion and her related testimony should be stricken and excluded in their entirety.

## II. <u>ADDITIONAL ARGUMENT AND AUTHORITIES</u>

### A.  Legal Standards for Expert Testimony

Expert opinion testimony on irrelevant matters is, of course, inadmissible. *See* Fed. R. Evid. 401, 402, 702. To be relevant here, the opinion must "assist the trier of fact to understand the evidence or to determine a fact in issue," and it must have a tendency to make a consequential fact more or less probable than it would be without the evidence. *See* Fed. Rules Evid. Rules 401 and 702.

Further, Federal Rule of Evidence 702 provides the following, in relevant part:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702.  *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 579-80 (1993).

---

[2] *See* Fed. Rule Evid. R. 403.

Under *Daubert*, federal courts function as gatekeepers to determine at the outset . . . whether [an] expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert*, *supra*. This gatekeeping function was later extended by the Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999), to apply to non-scientific testimony, requiring that "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"[3]

A court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert," and may "rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" *Burleson v. Tex. Dep't Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Opinions that are merely conclusory assertions, unsupported by specific facts, are inadmissible. *Thomas v. Christ Hosp. & Med. Ctr.,* 328 F.3d 890, 894 (7th Cir. 2003); *Nebraska*

---

[3] According to the Fifth Circuit, an "expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine, Inc*., 482 F.3d 347, 355 (5th Cir. 2007) (The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.). To be reliable, an expert's opinion must bear some indicia of certainty and cannot be conclusory or based on subjective belief. *Pipitone v. Biomatrix, Inc.* 288 F.3d 239, 245 (5th Cir. 2002); *Lewis v. Parish of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990) ("An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture."). Moreover, the data underlying an expert's opinion must be independently evaluated when determining whether the opinion is reliable. *See Kumho Tire Co., Ltd., supra.,* at 149 ("And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question … the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"); *Knight, supra*. (If the data is unreliable, an expert will not be permitted to base his opinion on that data because any opinion drawn from the data is likewise unreliable).

*Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416–417 (8th Cir. 2005) (expert's opinion failed to consider relevant facts and was so fundamentally flawed that it was of no assistance to jury).

As the proponent of Dr. Vinson's Opinion and related expert testimony, Plaintiffs bear the burden of showing, by a preponderance of the evidence, that Dr. Vinson's proffered Opinion and related testimony are both relevant and reliable. Fed. R. Evid. 104(a), 401, and 402; *Daubert*, 509 U.S. at 592, n.10. Also, Fed. R. Evid. Rule 403 permits a district court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentative of cumulative evidence."

**B. Dr. Vinson's Opinion is Not Relevant, It is Conclusory, and It is Not Reliable in Context.**

Dr. Vinson admitted the following in her deposition testimony in this lawsuit:

1. Dr. Vinson's involvement in this case simply involved a review of the literature - *it did not involve an evaluation or assessment of any of the individual plaintiffs* (*see* Ex. B-1, Depo., 86/11–18; 104/16– 108/20);

2. Dr. Vinson has been designated by the Plaintiffs for the limited purposes of providing a "*review of various published literature*" regarding the mental and physical harms from racial discrimination that "*may possibly*" be experienced by youth and adults including Blacks but not limited to Blacks (*see* Ex. B-1, Depo., 5/13-6/3; 117/25-118/8);

3. Dr. Vinson's Report is really in the nature of a "literature review" (*see* Ex. B-1, Depo., 116/14-/8);

4. Dr. Vinson was not asked to develop and she has not developed any opinions in this matter that are specific to any of the Plaintiffs or potential class member in this case (*see* Ex. B-1, Depo., 124/3-8; 145/18-146/10);

5. Dr. Vinson was not asked to and has not diagnosed any of the Plaintiffs or potential class members with PTSD or any mental or physical disorder or condition of any kind or nature *(see* Ex. B-1, Depo., 124/9-14; 137/12-139/24; 144/16-20; 151/5-153/14; 157/22-158/25; 161/20-163/15; 165/25-167/2);

6. Dr. Vinson was not asked to develop and she has not developed any opinions in this matter about whether any of the Plaintiffs or any potential class Plaintiffs are likely (based on reasonable medical probability or otherwise) to develop any mental or physical disorders or conditions of any kind or nature (*see* Ex. B-1, Depo., 124/17-125/4);

7. Dr. Vinson was not asked to attempt to quantify and has not quantified any increased risk, if any, of mental disorders or illnesses relating to the Plaintiffs or potential class members in this case (*see* Ex. B-1, Depo., 125/5-10);

8. Dr. Vinson is not able to identify any peer-reviewed study that concludes that Blacks or other minorities faced with a no Section 8 voucher restriction or any of the other rental rules involved in this case are more likely than not to experience a mental or physical disorder or issue of any kind (*see* Ex. B-1, Depo., 125/5-10);

9. Dr. Vinson looked at the complaint in this case solely for the purpose of helping her determine what sorts of things (literature) she was searching for to review (*see* Ex. B-1, Depo., 119/16-120/15);

10. Dr. Vinson has no information or opinion about, and it was not within the scope of her engagement to consider, whether any of the Plaintiffs or proposed class members have any mental or physical illness or problems of any kind or, if so, whether they had those problems or issues before they moved into Providence Village (*see* Ex. B-1, Depo., 134/20-135/13);

11. Dr. Vinson did not do any of the following, as they were outside the scope of her engagement:

    a. evaluate any individual plaintiff or any potential member of a class in this case (*see* Ex. B-1, Depo., 123/14-12);

    b. obtain and review any personal mental or physical health histories from or regarding any of the Plaintiffs or any potential members of a potential class in this case (*see* Ex. B-1, Depo., 121/18-122/9);

    c. use any of the information in the Plaintiffs' complaint in this lawsuit other than to identify the search terms that led to the articles that Dr. Vinson reviewed (*see* Ex. B-1, Depo., 122/10-123/12);

    d. provide any physical or mental health evaluation as to any specific plaintiff or potential class member in this case (*see* Ex. B-1, Depo., 123/19-22); or,

e.  address whether any of the Plaintiffs or potential class plaintiffs have been exposed, if at all, to any form of discrimination (*see* Ex. B-1, Depo., 169/22-170/12; 171/11-17);

12. That that not every person exposed to trauma, even a lot of trauma or repeated trauma, will develop a diagnosable mental health condition (*see* Ex. B-1, Depo., 111/15-112/20; 113/8–114/1);

13. That the American Psychiatric Association's Diagnostic and Statistical Manual Mental Disorders ("DSM-5") provides a classification of mental disorders with associated diagnostic criteria and that the diagnostic criteria in DSM-5 provide generally accepted standards in the mental health field for the diagnosis of mental disorders; Dr. Vinson has not applied the DSM-5 to any of the Plaintiffs in this case (*see* Ex. B-1, Depo., 108/21-109/21; 111/10–111/14; 153/25-155/12);

14. That where Dr. Vinson is making a new diagnosis or confirming a diagnosis of some sort of a mental disorder or mental illness that is relevant to the forensic question and scope in a given case, it is Dr. Vinson's practice to then identify in her report the diagnostic criteria she used (*see* Ex. B-1, Depo., 114/25-115/25);

15. Dr. Vinson has no opinion on whether any of the Plaintiffs in this lawsuit have experienced any of the following, which she admits are social determinants of mental health: adverse early life experiences; exposure to violence and conflict; interaction with the criminal justice system; low education; unemployment and under employment; poverty and income inequality; area level poverty; or food insecurity (*see* Ex. B-1, Depo., 104/16–108/20); and,

16. Dr. Vinson considers herself a "champion" and a "strong advocate" for social justice (*see* Ex. B-1, Depo., 94/13– 6; 95/19-21).

Based on Dr. Vinson's Report and the above testimony, Dr. Vinson's Opinion is simply not relevant. Here, Plaintiffs seek damages for alleged emotional distress purportedly caused by claimed housing discrimination under the Fair Housing Act.[4] However, Plaintiffs bear the burden to prove that **each plaintiff personally suffers from emotional distress and that the alleged discrimination caused that distress**.[5] Accordingly, the gist of Dr. Vinson's Opinion and related

---

[4] *See* Plaintiffs' Amended Complaint, p. 47, § IX, ¶ 208 a.

[5] *See, e.g., United States v. Balistrieri, 981 F.2d 916, 931 (2nd Cir. 1992), citing Carey v. Piphus*, 435 U.S. 247, 263-64, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) (holding in a procedural due process

7

testimony, again that "scientific literature" indicates people in general ***may possibly*** experience mental and physical harm from racial discrimination, is simply not at issue.[6] Indeed, Defendants do not dispute this general (but irrelevant) proposition when the appropriate diagnostic criteria are met. By analogy, it is known that military veterans may possibly develop Post Traumatic Stress Disorder ("PTSD"). However, a 2015 meta-analysis examining 33 studies involving 4,945,897 Operation Enduring Freedom/Operation Iraqi Freedom ("OEF/OIF") veterans estimated the prevalence of PTSD in those veterans at 23% (and it was more likely than not that these veterans would **not** develop PTSD).[7] Clearly, just because OEF/OIF veterans ***may possibly*** experience PTSD does not mean that they will – or even that they are likely – to do so. Similarly, just because a general population, including Blacks or females, may possibly experience mental and physical harm from racial discrimination (from whatever source) does not mean that they have or will experience such harm – or even that they are likely to do so. Dr. Vinson's Opinion adds nothing of consequence – or relevance – to the issues in this case.

It is obvious that Plaintiffs intend to offer Dr. Vinson's Opinion in the context of trying to convince the trier of fact that one or more Plaintiffs in this lawsuit (if not all Plaintiffs) have (allegedly) experienced mental or physical injury caused by purported racial discrimination by Defendants. After all, this case is not like, *e.g.*, a product liability case in which scientific literature

---

case that "neither the likelihood [of emotional distress] nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused").

[6] *See* Ex. A, Report; Ex. B-1, Depo., 5/13-6/3; 117/25-118/8.

[7] *The prevalence of posttraumatic stress disorder in Operation Enduring Freedom/Operation Iraqi Freedom (OEF/OIF) Veterans: A meta-analysis,* Journal of Anxiety Disorders, Vol. 31, April 2015, pages 98-107 (*see* https://www.sciencedirect.com/science/article/abs/pii/S0887618515000262?via%3Dihub).

is used to support an opinion that exposure to a pesticide caused a claimant's symptoms.[8] However, Dr. Vinson has admitted that she was not asked to develop and Dr. Vinson has not developed any opinions in this matter that are specific to any of the Plaintiffs or potential class member in this case, and that she was not asked to and has not diagnosed any of the Plaintiffs or potential class members with PTSD or any mental or physical disorder or condition of any kind or nature.[9] In fact, Dr. Vinson did not even obtain and review any personal mental or physical health histories from or regarding any of the Plaintiffs or any potential member of a class in this case - much less evaluate any of them for mental or physical disorders.[10] Accordingly, Defendants object that in the context for which it is clearly offered, Dr. Vinson's Opinion (and related testimony) is also inadmissible as lacking foundation, unsupported, and conclusory.[11]

## C.  Dr. Vinson's Opinion is Not Helpful

For the reasons offered in the preceding Section B of this Motion, Defendants also object that Dr. Vinson's Opinion (and associated testimony) is unhelpful for the trier of fact to understand the evidence or to determine a fact in issue and is, therefore, inadmissible.[12]

---

[8] *See*, *e.g.*, *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 421-422 (5th Cir. 1987).

[9] *See* Ex. B-1, Depo., 124/3-8; 145/18-146/10).

[10] *See* Ex. B-1, Depo., 123/14-12; 121/18-123/12; 123/19-22; 169/22-170/12; 171/11-17; 124/9-14; 137/12-139/24; 144/16-20; 151/5-153/14; 157/22-158/25; 161/20-163/15; 165/25-167/2.

[11] *See* Fed. R. Evid. R. 703; *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123-1124 (5th Cir. 1988) (expert doctor's opinion that in reasonable medical probability asbestos exposure caused decedent's cancer held to lack foundation and be unreliable when doctor never examined decedent, relied on examinations of others with different conclusions, and failed to demonstrate a link between data linking asbestos exposure to colon cancer and decedent's colon cancer).

[12] Fed. R. Evid. R. 702(a); *Nestle v. BP Expl. & Prod.*, 627 F. Supp. 3d 577, 588 (5th Cir. 2022) (Expert toxicologist's failure to identify the level of exposure to a relevant chemical that can cause the conditions asserted by plaintiffs rendered his opinion unreliable, unhelpful, and incapable of establishing causation).

9

**D.  Dr. Vinson's Opinion is Unreliable**

For the reasons offered in the preceding Section B of this Motion, Defendants also object that Dr. Vinson's Opinion (and associated testimony) is unreliable in the context of it being offered by Plaintiffs to try to indirectly and implicitly show that one or more Plaintiffs in this lawsuit (if not all of the Plaintiffs) have (allegedly) experienced mental or physical injury caused by purported racial discrimination by Defendants.[13]

Defendants also note that the lack of reliability of Dr. Vinson's Opinion and related testimony is heighted by her admissions that (1) not every person exposed to trauma, even a lot of trauma or repeated trauma, will develop a diagnosable mental health condition; (2) she is not able to identify any peer-reviewed study which concludes that Blacks or other minorities faced with a no Section 8 voucher restriction or any of the other rental rules involved in this case are more likely than not to experience a mental or physical disorder or issue of any kind; and (3) she has no information or opinion about, and it was not within the scope of her engagement to consider, if any of the Plaintiffs or proposed class members have any mental or physical illness or problems of any kind or, if so, whether they had those problems or issues before they moved into Providence Village.[14]

---

[13] Fed. R. Evid. R. 702(a); *Daubert*, 509 U.S. at 579-80; *Nestle,* 627 F.Supp.3d at 588; *U.S. v. Countentos*, 651 F.3d 809, 820-21 (8th Cir. 2011) (testimony failed to satisfy Rule 702 because expert has not reviewed interviews or case-specific information and thus could not have "applied the principles and methods reliably to the facts of the case").

[14] Ex. B-1, Depo., 111/15-112/20; 113/8–114/1; 125/5-10; 134/20-135/13).

**E. Any Purported Probative Value is Outweighed by Dangers Under Fed. R. Evid. Rule 403.**

Defendants continue to object and assert that Dr. Vinson's Opinion and related testimony do not have any probative value in this case. Subject to and without waving this objection, to the unlikely extent it may be determined that Dr. Vinson's Opinion and related testimony do have probative value in this case, Defendants object that any probative value of Dr. Vinson's Opinion and related testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and it should be excluded under Fed. R. Evid. Rule 403.

Once again, for the sake of brevity, Defendants incorporate Section B of this Motion in support of these objections under Fed. R. Evid. Rule 403. Defendants further note that Dr. Vinson's Opinion and related testimony stand for the general proposition that the literature reviewed indicates the mental or physical health of general populations, including but not limited to Blacks and females, *may possibly* be impacted by discrimination - without attempting to, much less offering, any reliable link between this proposition and the personal factual circumstances (including mental and physical health conditions and related background circumstances) of the individual Plaintiffs (or prospective class members) in this case. Dr. Vinson's Opinion and related testimony are calculated to confuse and mislead the jury on the issue of whether the Plaintiffs have met their burden of proof regarding Plaintiffs' mental anguish allegations. This, along with the associated lack of reliable support (*see* Section D of the Motion above) and the burden (including, without limitation, the time spent to prepare for trial and during trial, in the unlikely event dispositive motions by Defendants are not granted, to try to put Dr. Vinson's Opinion and related testimony in the proper context for the jury - while distracting from Defendants' other defense efforts) imposed on Defendants, also creates a danger of great prejudice to Defendants

11

that outweighs any potential probative value, if any, of Dr. Vinson's Opinion and related testimony. Accordingly, Dr. Vinson's Opinion and related testimony should be stricken.[15]

### III.   CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendants, FirstService Residential Texas, Inc., and Providence Homeowners Association, Inc., respectfully pray that their objections and this Motion be granted, that the opinions and testimony of Plaintiffs' expert witness, Dr. Sarah Vinson, be stricken and excluded, and that Dr. Sarah Vinson be prevented from providing any testimony or opinions to be used on a motion, at a hearing, or at trial, in this lawsuit, and further request all other relief, either at law or in equity, to which they may be justly entitled.

Respectfully submitted,

By: /s/ *Roger L. McCleary*
    Roger L. McCleary
    *Attorney-In-Charge*
    Texas State Bar No. 13393700
    rmccleary@pmmlaw.com
    James C. Burnett
    Texas State Bar No. 24094025
    jburnett@pmmlaw.com
    Parsons McEntire McCleary PLLC
    One Riverway, Suite 1800
    Houston, Texas 77056
    (713) 960-7315 (Telephone)
    (713) 960-7347 (Facsimile)

**ATTORNEYS FOR DEFENDANT
FIRST SERVICE RESIDENTIAL
TEXAS, INC.**

By: */s/David A. Talbot*_____
    Sarah R. Smith
    *Attorney-In-Charge*
    Texas State Bar No. 24056346
    Email: Sarah.Smith@dinsmore.com

---

[15] Tex. R. Evid. Rule 403; Viterbo, 826 F.2d at 422 (5th Cir. 1987).

David A. Talbot
Texas State Bar No. 24037580
Email: David.Talbot@dinsmore.com
JPMorgan Chase Tower
600 Travis St., Suite 7350
Houston, Texas 77002
Telephone: 346-293-7878
Facsimile: 346-293-7877

**ATTORNEYS FOR DEFENDANT PROVIDENCE HOMEOWNERS ASSOCIATION, INC.**

**\* Signed by permission**

## CERTIFICATE OF CONFERENCE

I certify that on April 17, 2026, I conferred with Plaintiffs' counsel by email regarding the foregoing motion and they are opposed.

*/s/ Roger L. McCleary*
Roger L. McCleary

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record has been served with the foregoing document though PACER, as authorized by the Federal Rules of Civil Procedure, on this 20th day of April 2026:

Laura B. Beshara
State Bar No. 02261750
Daniel & Beshara, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Email: laurabeshara@swbell.net

Michael M. Daniel
State Bar No. 05360500
Daniel & Beshara, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Email: Daniel.michael@att.net

**Attorneys for Plaintiffs**

13

David A. Talbot Esq.
Sarah R. Smith, Esq.
Dinsmore
24 Greenway Plaza, Suite 1400
600 Travis Street, Suite 7350
Houston, Texas 77002
Email: *David.Talbot@dinsmore.com*
Email: *Sarah.Smith@dinsmore.com*

**Counsel for Respondent Providence Homeowners Association, Inc.**


/s/ *Roger L. McCleary*
Roger L. McCleary

3226214.1