# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| Dewanna Johnson, Sheilla Nathan, Alonzo Tutson, Evora Sykes, Chanell Hobbs, Revisha Silas, Evette Townsend<br><br>Plaintiffs,<br><br>v.<br><br>Providence Homeowners Association, FirstService Residential Texas, Inc.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No. 4:25-CV-00418-ALM**<br><br>**JURY DEMANDED** |

### DECLARATION OF ROGER L. MCCLEARY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

The undersigned provides this declaration ("Declaration") pursuant to Texas Civil Practice and Remedies Code Section 132.001 and declares as follows:

1.  My name is Roger L. McCleary. I am over 21 years of age. I am of sound mind and body and I am competent to make this declaration. The statements made in this declaration are based upon my personal knowledge and are true and correct.

2.  I am a counsel of record for defendant FirstService Residential Texas, Inc. ("FirstService") in the above-styled and numbered lawsuit. In that role, I am personally familiar with the documents and matters that are the subject of this declaration.

3.  Attached as Exhibit B–1 to this Declaration is a true and correct copy of excerpts (some redacted where indicated) from the condensed transcript of the Remote Oral and Videotaped Deposition of Dr. Sarah Vinson taken in the above-styled and number lawsuit on April 6, 2026, with the Reporter's Certifications.

FURTHER DECLARANT SAYETH NOT.

Executed in Harris County, State of Texas, USA, on the 17th day of April, 2026.

_____
Roger L. McCleary

3226253.1

# Exhibit B-1

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

DEWANNA JOHNSON, SHEILLA      )
NATHAN, ALONZO TUTSON, EVORA  )
SYKES, CHANELL HOBBS REVISHA  )
SILAS, EVETTE TOWNSEND,       )
                              )
     Plaintiffs,              )
                              ) CIVIL ACTION NO.
VS.                           ) 4:25-CV-00418-ALM
                              )
PROVIDENCE HOMEOWNERS         )
ASSOCIATION, FIRSTSERVICE     )
RESIDENTIAL TEXAS, INC.,      )
                              )
     Defendants.              )

*************************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

DR. SARAH VINSON

APRIL 6, 2026

(Reported remotely)

*************************************************************

ORAL AND VIDEOTAPED DEPOSITION OF DR. SARAH VINSON, produced as a witness at the instance of the Defendants, and duly sworn, was taken in the above-styled and numbered cause on the 6th day of April, 2026, from 10:32 AM to 3:55 PM, before Nyree-Dawn Lloyd, CSR in and for the State of Texas, reported by machine shorthand, with the witness located at Augusta, Georgia, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Page 2

A P P E A R A N C E S

FOR THE PLAINTIFFS:
     Ms. Amira Perryman (By Zoom Videoconference)
     Ms. Morenike Fajana
     Mr. Maydrian Strozier-Lowe
     NAACP LEGAL DEFENSE & EDUCATIONAL FUND
     40 Rector Street, Floor 5
     New York, New York  10006
     Phone: 212.965.2200
     Email: aperryman@naacpldf.org

FOR THE DEFENDANT, FIRSTSERVICE RESIDENTIAL, TEXAS, INC.:

     Mr. Roger L. McCleary (By Zoom Videoconference)
     PARSONS MCENTIRE MCCLEARY, PLLC
     One Riverway, Suite 1800
     Houston, Texas  77056
     Phone: 713.960.7315
     Email: rmccleary@pmmlaw.com

FOR THE DEFENDANT, PROVIDENCE HOA:
     Mr. Gene Baldonado (By Zoom Videoconference)
     DINSMORE & SHOHL LLP
     12 Greenway Plaza, Suite 1100
     Houston, Texas  77046
     Email: gene.baldonado@dinsmore.com

ALSO PRESENT:
     Robert Pierce - Videographer (By Zoom Videoconference)

Page 3

INDEX

                                              PAGE
Appearances ........................................2
DR. SARAH VINSON
     Examination by Mr. McCleary ....................4
     Examination by Ms. Perryman ...................179
     Further Examination by Mr. McCleary ...........189
Signature Page .....................................194
Court Reporter's Certificate .......................196

EXHIBITS

NO.       DESCRIPTION                         PAGE
Exhibit 1 Second Amended Deposition Notice       9
Exhibit 2 Expert Report                         13
Exhibit 3 Testimony List                        25
Exhibit 4 Curriculum Vitae                      21
Exhibit 5 Social Injustice Excerpts             86
Exhibit 6 Diagnostic and Statistical Manual of 153
          Mental Disorders
Exhibit 7 Documents                             18

Page 4

P R O C E E D I N G S :

THE VIDEOGRAPHER:  Going on the record. Today's date is April the 6th of 2026.  The time is 10:32 AM Central Daylight Time.  This is the beginning of Media 1 in the remote videotaped deposition of Dr. Sarah Vinson.

THE REPORTER:  Can I please have counsel state your appearances and who you represent and then I will swear in the witness.

MR. McCLEARY:  Roger McCleary with Parsons McEntire McCleary representing defendant FirstService Residential Texas, Inc.

MS. PERRYMAN:  Amira Perryman with the Legal Defense Fund representing plaintiffs and producing Dr. Vinson.

MR. BALDONADO:  Gene Baldonado at Dinsmore & Shohl representing for defendant Providence HOA.

MS. FAJANA:  And Morenike Fajana also with the Legal Defense Fund for the plaintiffs.

THE REPORTER:  Thank you, Counsel.

DR. SARAH VINSON, having been first duly sworn, testified as follows:

EXAMINATION

BY MR. McCLEARY:

Q.   Good morning, Dr. Vinson.  How are you?

(888) 893-3767
www.lexitaslegal.com

Lexitas operates in all 50 states and is licensed where required
Nevada Registration #116F  -  California Firm Registration #179



Page 5

A.    Good, how are you?

Q.    I am well, thank you.

My name is Roger McCleary.  I introduced myself just briefly before we started today.  You and I have never met or spoken other than my brief introduction before we started your deposition today, correct?

A.    To my knowledge, yes.

Q.    And you understand that you are here today to give deposition testimony in a lawsuit pending in the Eastern District of Texas, the Dewanna Johnson lawsuit.  Do you understand that?

A.    Yes.

Q.    You have been designated as an expert witness by the plaintiffs in the lawsuit, and as I understand it, for the limited purposes of providing a review of various published literature regarding the mental and physical harms from racial discrimination that may possibly be experienced by black youths and adults.  Is that a fair statement?

A.    The focus is on that.  The report does include some information related to nonblack peoples potential impact from racism, but generally, yes.

Q.    All right.  With the addition that some of your review also addresses the effects of racism on nonBlacks, you would agree that that is a fair

Page 6

characterization of what you have been designated for in this lawsuit, correct?

A.    Correct, at this time.

Q.    And I understand you have been deposed before, true?

A.    True.

Q.    So you do generally understand what a deposition is and how it can be used at trial, correct?

A.    I do.

Q.    And right now you are -- strike that.

Your deposition is being taken remotely by video and I am in Houston asking you questions.  Where are you located now answering questions in this deposition?

A.    Atlanta, Georgia.

Q.    And you understand that even though we are taking your deposition and you are in Atlanta, that your deposition testimony today can be used at a trial just as if you are testifying before the judge and the jury, correct?

A.    Correct.

Q.    And you understand you have taken an oath to tell the truth?

A.    Yes.

Q.    I would like to have some agreements with you,

Page 7

Doctor.  If during the deposition I ask you any question that you don't understand for whatever reason, would you please ask me to rephrase or restate the question so that you understand it before you answer?

A.    I will.

Q.    Thank you.  Also, I would ask that you provide responsive answers to my questions during the deposition today as the plaintiff's counsel have an opportunity to ask you their questions later.  Will you do that?

A.    To the best of my ability, yes.

Q.    Thank you.  And if for whatever reason you need a break during the course of the deposition, please let me know and I will be happy to give you that opportunity.  I would ask only that you answer any pending questions before we take a break, okay?

A.    Okay.

Q.    Thank you.  What have you done to prepare for this deposition?

A.    I have reviewed my report, reviewed notes from our conversations related to deposition prep.  That's it.

Q.    And the conversations related to deposition prep have been with attorneys representing the plaintiffs, correct?

A.    Correct.

Page 8

Q.    And we have Ms. Perryman who is an attorney representing plaintiffs who is here presenting you for deposition today.  You understand that?

A.    Yes.

Redacted



Redacted

████████████████████████████████████████

Q    (MR. McCLEARY) Doctor, in any event, what I am -- what I want to establish is that you -- I understand you have a folder that includes copies of the various articles and treatises that are the subject of your review marked as Exhibit 2; is that correct?

A.    Yes.

Q.    And can you provide that to us at this time? Do you have access to that?

A.    I can.

Q.    Okay.  Is that something that you can email then to --

MS. PERRYMAN:  All documents have been emailed this morning.  You should have them.

MR. McCLEARY:  You sent all those documents this morning by email?

MS. PERRYMAN:  Yes.

MR. McCLEARY:  So this is an email that you apparently sent at 10:05 this morning?  Is that what you are referring to?

MS. PERRYMAN:  Yes.

(Exhibit 7 marked.)

MR. McCLEARY:  All right.  And I'm going to try to drop this into the chat box if it is not too big.  I think it may take a little time to load.

Q    (MR. McCLEARY) Okay.  It has popped up.  And I am now loading it.  Doctor, can you open what I marked as Exhibit 7 to your deposition?

A.    It is open.

Q.    Okay.  And I have just done a quick scan through it.  It appears to be a volume of articles of some type; is that correct?

A.    That is correct.

Q.    You understand that these are the articles that are the subject of your review marked as Exhibit 2 in

your report?

A.    Correct.

Redacted

████████████████████████████████████████



Redacted

(Exhibit 5 marked.)

Q.    (MR. McCLEARY) Doctor, we are back on the record after having taken a short break.  Do you understand we are on the record?

A.    Yes.

Q.    I have uploaded Exhibit 5 to your deposition which are excerpts from the book you co-edited Social Injustice and Mental Health.  Let me know when you are able to open that.

A.    Okay.  It is open.

Q.    Okay.  Thank you.  And do you see that these appear to be excerpts from that book?

A.    Yes.



Q.   All right.  You consider yourself to be a strong advocate for social justice, true?

A.   I think that's fair, yes.

Q.   Redacted

Q.   And do you consider yourself a champion of social justice?

Redacted.

A.   Yes.

Page 101

Redacted

Q    (MR. McCLEARY) Turning to page 10 -- I am sorry.  Turning to page 20 of 24 in the PDF, Doctor, let me know when you are there.

A.   I'm there.

Q.   The second line from the bottom where it reads, quote, "Biology and genetics indeed play a role in the development of and outcomes associated with substance use disorders and other mental illnesses," end quote. Have I read that correctly?

A.   Yes.



Page 105

Q.   And do you agree with that statement?

A.   **Yes.**

MS. PERRYMAN:  Objection; form.

Q    (MR. McCLEARY) Pardon me?

A.   **Yes.**

Q.   And then finally on this exhibit, if you will turn to page 23 of 24, please, Doctor.

A.   **I'm there.**

Q.   You have a Table 2.1 with one of the headings being, "Social determinate of mental health."  Do you see that, Doctor?

A.   **Yes.**

Q.   And they include the following, quote, "Adverse early life experiences," end quote, correct?

A.   **Correct.**

Q.   Quote, "Exposure to violence and conflict," end quote, correct?

A.   **Correct.**

Q.   Quote, "Interaction with the criminal justice system," end quote, correct?

A.   **Correct.**

Q.   Quote, "Low education," end quote, correct?

A.   **Correct.**

Q.   Quote, "Unemployment and under employment," correct?

Page 106

A.   **Correct.**

Q.   Quote, "Poverty and income inequality," end quote, correct?

A.   **Correct.**

Q.   Quote, "Area level poverty," end quote, correct?

A.   **Correct.**

Q.   And quote, "Food insecurity," end quote, correct?

A.   **Correct.**

Q.   Those are some of the social determinates you list in Table 2.1, true?

A.   **Yes, those are some but not all of the social determinates listed in that table.**

Q.   And I am correct that -- strike that.

And do you have an opinion on whether the plaintiffs in this lawsuit have experienced one or more of those things?

Redacted

A.   **My involvement in this case at this point simply involved a review of the literature.  It did not involve an evaluation or assessment of the individual plaintiffs.**

Q    (MR. McCLEARY) And as a part of that, I assume your role in this case then did not include considering

Page 107

whether any of the plaintiffs in this case have experienced any of these things in a manner that may have caused or contributed to any mental issues, if any, true?

Redacted

Q    (MR. McCLEARY) Correct?

A.   **Please restate the question.**

Q.   Yeah.  And I assume then, Doctor, that your role in this case and your review and the opinions in your review do not extend to and do not consider whether any of the plaintiffs in this case actually experienced any of these items that we just listed, correct?

Redacted

A.   **My role in the case was to perform a literature review for the topic.  I did not do any specific evaluation of the plaintiffs.**

Q    (MR. McCLEARY) And as a part of that, you did not consider whether any of the plaintiffs have any history or experienced any of these social determinates of mental health we just listed, correct?

Redacted

A.   **Again, evaluation of the plaintiffs was not part of my consultation.**

Q    (MR. McCLEARY) And so you did not consider whether any of the plaintiffs actually had experienced

Page 108

any of these social determinates of mental health that we just identified, correct?

Redacted

A.   **There was nothing done as it relates to the plaintiff specifically because that was outside of the scope of my forensic question.**

Q    (MR. McCLEARY) And so would the answer to my question be that is correct, you did not consider any of those social determinates in connection --

Redacted

 Redacted

A.   **Nothing was considered as it relates to the particular plaintiffs given the scope and nature of the consultation question.**

Q    (MR. McCLEARY) And just so I am clear on my hearing, you said nothing was considered; is that correct?

Redacted

A.   **I said as it relates to the specific plaintiffs.**

Q    (MR. McCLEARY) Doctor, what is the Diagnostic and Statistical Manual of Mental Disorders, DSM-5?

A.   **It is a book published by the American Psychiatric Association that describes different mental health conditions, their symptoms and provide some**



Page 109

background information about them.

Q.   And does the American Psychiatric Association's Diagnostic and Statistical Manual Mental Disorders or DSM-5 provide a classification of mental disorders with associated diagnostic criteria?

A.   Among other things, yes.

Q.   And you understand that when I refer to DSM-5, and I like to have the agreement with you that we are referring to the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, published by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Health Disorders -- actually, let me rephrase that.  Strike that.

Can we have the agreement and understanding that when I refer to DSM-5 we are referring to the Diagnostic and Statistical Manual of Mental Disorders?

MS. PERRYMAN:  Objection; form.

A.   Yes.

Q   (MR. McCLEARY) And that is published by the American Psychiatric Association, correct?

A.   Correct.





Redacted

Q.   Yes.  Do you agree that the diagnostic criteria in DSM-5 provide generally accepted standards in the mental health field for the diagnosis of mental disorders?

A.   Yes, I think that's fair.

Q.   Do you agree that not every person exposed to trauma will develop a mental disorder?

A.   I agree.

Q.   And do you -- strike that.

How would you define and use the terms mental disorder?

A.   Well, not just me but the field generally thinks about a mental disorder as something that results in significant impairment and/or significant distress. So it is a mental health condition that is related the thoughts, feelings or behaviors that is going to get in

Page 112

someone's way in terms of functioning or cause them a lot of suffering.

Q.   And how would you define and use the term, quote, "mental illness," end quote, the terms?

A.   The same way I just described mental disorder.

Q.   So you would basically consider, quote, "mental disorder," end quote to be the same as, quote, "mental illness," end quote?

A.   Yes.

Q.   And how would you define and use the term, quote, "trauma," end quote?

MS. PERRYMAN:  Objection; form.

A.   The trauma is a very broad term and broad strokes.  You can think about it as something that has the potential to have longstanding negative impacts on a person.  Generally, it is something that resulted in fear or helplessness or gave someone a sense that they or someone they cared about was in danger in some way and the brain, the body has had trouble processing it and moving on from it subsequent to that incident.

Redacted



Redacted

███████████████████████████████
███████████████████████████████
███████████████████████████████
█████████████████████████████████
███████████████████████
███████████████████████████████.

Q     (MR. McCLEARY) Let me restate the question for you, Doctor.  Do you agree that not everyone who experiences a lot or repeated trauma will develop a mental disorder or mental illness?

MS. PERRYMAN:  Objection; form.

A.    It is a convoluted question and I am trying to answer it the best that I can that's accurate.  Not everyone who is exposed to trauma will develop a diagnoseable mental health condition.  I agree that that is the case.

Q     (MR. McCLEARY) Even if they are exposed, at least some of them, to a lot or repeated trauma, you would still agree with them, true?

MS. PERRYMAN:  Objection; form.

Q     (MR. McCLEARY) That not everyone will develop a mental disorder or mental illness, correct?

A.    So I agree that people who are exposed to traumas, even if it is multiple traumas, may not all

develop what is a diagnoseable mental health condition.

Q.    And when you prepare a report, is it true that if Redacted
██████████████████████████████
██████████████████████████████
████████████████████████
██████████████████████
█████████████████████████████
█████████████████████████████
█████████████████████████████
█████████████████████████
█████████████████████████████
████████████████████
█████████████████████████
██████████████████
████████████████████████████
█████████████████████
█████████████████████████████
███████████████████████████████
█████
██████████████████████████
█████████████████████████████
█████████████████████████
████████████████

Q     (MR. McCLEARY) I don't mean to assume that in

the question, Doctor.  So just to be clear, when you do prepare a report that does include a diagnosis, is it your practice to include the related discussion or identification of the related diagnostic criteria that you have identified in connection with that diagnosis?

MS. PERRYMAN:  Objection; form.

A.    Again, that is going to depend on the scope of the report and what the forensic question is.

Q     (MR. McCLEARY) Well, is it not generally your practice to identify the diagnostic criteria you have used when you have prepared a report that does include a diagnosis of some sort of a mental disorder or mental illness?

MS. PERRYMAN:  Objection; form.

A.    So there -- so you changed it a little bit.  So you said diagnostic criteria that I used.  So it is a situation where I am making a new diagnosis or I am confirming a diagnosis and that is relevant to the forensic question and scope in a given case, then yes, I will include those things.

But there may be cases where I am noting that they have previous diagnoses or that is not part of my scope, and so in that case, even though a diagnosis is mentioned, I may not go through all of the criteria for it.

Redacted ████████████████████████████
████████████████████████████
████████████████████
█████████
██████████████████████
███████████████████████████████
██████████
████████████████████████
██████████████████████████████
████████████████
███████████████████████████████
██████████████████
████████

Q.    And if you would please pull up Exhibit 2 to your deposition and a copy of your report?

A.    Okay.

Q.    And your report really is in the nature of, as you said, a literature review, correct?

A.    Correct.

Q.    So if I refer to a review, you understand I'm referring to what we have marked as Exhibit 2 to your deposition?

A.    Yes.

Q.    And, Doctor, when were you engaged in this matter?



Page 117

A.   It was in 2025 sometime.  I couldn't tell you the exact month.

Q.   I'm sorry.  I didn't hear the last thing you said.

A.   I said I could not tell you the exact month off of memory, but I know it was in 2025.

Q.   I also have open, I don't know if you do, Exhibit 7, and on page 307 of that document, it includes your invoice.  And I will tell you that the first description for that invoice is dated October 22nd of 2025.  Does that refresh your recollection as to when you were engaged in this matter at all?

A.   So fall of 2025 then.

Q.   Who were you engaged by?

A.   A member from the Legal Defense Fund team.

Q.   Do you remember who?

A.   I don't remember who I did the initial call with, no.

Q.   And your assignment is described in your review attached as Exhibit 2, correct?

A.   Can you restate the question.

Q.   Yes.  Your assignment, your task and role in this matter is described in Exhibit 2, correct?

A.   My role is described in Exhibit 2?

Q.   Well, let me rephrase it.  We actually at the

Page 118

beginning of the deposition, as I recall, agreed that you were designated by the plaintiffs for the limited purposes of providing a review of various published literature regarding the mental and physical harms from racial discrimination that may possibly be experienced by youth and adults including Blacks but not limited to them, correct?

A.   Correct.

Q.   And that's all you did in connection with this matter, correct?

A.   As mentioned, I think I did have a copy of the complaint.  So I reviewed that too but everything else that was reviewed was peer reviewed literature.

Q.   And when did you review the complaint, if you recall?

A.   It was toward the beginning of my work on the case.  I don't remember the exact date.





Redacted

Q    (MR. McCLEARY) Okay.  Just so I understand correctly, if I understand what you are saying, you reviewed the complaint in this matter to inform you about what articles should be reviewed but not for any other reasons or purposes.  Is that a fair statement?

Redacted

A.   Not quite.  So the complaint helped me know what things to search, and then the search process led to the articles and the articles that were reviewed.  It was just a matter of informing what sorts of things I

Page 120

was searching for.

Q    (MR. McCLEARY) And you didn't use the complaint or any attachments to that for any reason or purpose other than what you just described; fair statement?

A.   Not for my work up until this time, no.

Q.   So that is a fair statement?

A.   Not for my work up until this time, no.

Q.   You didn't use it for any other purposes or reasons for your work up until this time.  Is that a fair statement?

Redacted

A.   I -- the -- I did not use it for any other reason than what I just described for my work in this case up until this time.

Redacted



Page 121

Redacted

I want to ask you about what you were not asked to do and did not do. Am I correct that you did not interview any of the plaintiffs or any of the potential members of the potential class in this case?

A.   I did not as that was outside of the scope.

Q.   And am I correct that you were not asked to and you did not review any medical records for any of the plaintiffs or potential members of a potential class in

Page 122

this case?

A.   I did not because that was outside of the scope.

Q.   And am I correct that you did not obtain and review any personal mental or physical health histories from or regarding any of the plaintiffs or any potential members of a potential class in this case, correct?

Redacted

A.   I did not as that was outside of the scope.

Q     (MR. McCLEARY) And is it true that you did not obtain and review any personal information from or regarding any of the plaintiffs or any of the potential members of the class whatsoever?

Redacted

A.    There was some information in the complaint. So to the extent that the complaint included that, that was reviewed.  Outside of that, no.

Q     (MR. McCLEARY) But you didn't use or rely upon that in connection with your review of the literature other than maybe to try to identify the types of literature that you were going to review.  Is that a fair statement?

Redacted

A.    Again, it was used for the search terms that led to the articles that were reviewed.

Page 123

Q     (MR. McCLEARY) And that's all in connection with your work to date, correct?

A.   Can you say the whole question?

Q.   Again, just confirming that your review of the complaint or any attachments to the complaint was for the purpose of developing search terms for the literature review that you did and that was the only use and purpose in connection with your work to date, correct?

Redacted

A.   Oh, correct.  I think we might have spoken at the same time.

Q     (MR. McCLEARY) Thank you.

And so you were not asked to and you have not done an evaluation of any individual plaintiff in this case or any potential member of a class in this case, true?

A.   That is outside the scope.  That is true.

Q.   And you were not asked to and you are not prepared to provide any physical or health evaluation as to any specific plaintiff or potential class member in this case, correct?

A.   That is outside the scope, correct.

Q.   And you don't consider any of the plaintiffs or potential class members to be patients of yours,

Page 124

correct?

A.   Correct.

Q.   And it would be fair to say that you have not been asked to develop and have not developed any opinions in this matter that are specific to any of the plaintiffs or the potential class members in this case, correct?

A.   Also outside the scope, correct.

Q.   And it would be fair to say that you have not been asked to and have not diagnosed any of the plaintiffs or potential class members with any mental or physical disorder or condition of any kind or nature, correct?

A.   Up until this point, that is correct.

Q.   And you did a literature review.  So -- well strike that.  I have asked that.

You have not been asked to offer an opinion and have not developed any opinion about whether any of the plaintiffs in this matter or any potential class plaintiffs are likely to develop any mental or physical disorders or conditions of any kind or nature, correct?

A.   Not at this time, correct.

Q.   And certainly then you haven't been asked to and haven't developed any opinion about whether any of the plaintiffs in this matter or any potential class



Page 125

Redacted

members are likely based on reasonable medical probability to develop any mental or physical disorders or conditions of any kind or nature, correct?

A.    Not at this time, correct.

Q.    You have not been asked to attempt to quantify and have not quantified any potentially increased risk, if any, of mental disorders or illnesses relating to the plaintiffs or potential class members in this case, correct?

A.    Not at this time, correct.

Redacted

Redacted

Q    (MR. McCLEARY) And did any of the literature you reviewed provide an incidence of mental disorders in general in the US population of black children and adolescents that you recall?

Redacted

A.   Not that I recall at this time.

Redacted

Q.   Is it your opinion that all black people in the United States experience structural racism?

         MS. PERRYMAN:  Objection; form.

A.   I do believe that the vast majority of black people in the United States have experienced or been exposed to some form of structural racism, yes.

Q    (MR. McCLEARY) Can you quantify that in terms of the percentage of black people in the United States you believe have experienced some form of structural racism?



Page 133

Redacted

A.    The vast majority.  I can't put an exact percentage on it.  But I think it is the vast majority of people.

Q    (MR. McCLEARY) Can you elaborate at all beyond the vast majority in your opinion?

A.    No.

Q.    Do you have an opinion that all black people in the United States have experienced racism of some form?

Redacted

A.    Can you restate the question.

Q    (MR. McCLEARY) Yes.  Do you hold the opinion that all blacks in the United States have experienced some form of racism?

Redacted

A.    I do think that the vast majority of blacks in the United States have experienced some form of racism.

Q    (MR. McCLEARY) Can you quantify your response beyond the vast majority of blacks?

A.    No.

Q.    Do you have an opinion that all blacks in the United States experience some form of mental health disorder from racism?

Redacted

A.    Can you restate the question.

Page 134

Q    (MR. McCLEARY) Yes.  Do you have an opinion that all blacks experience some form of mental health disorder from racism in the United States?

A.    No.  I said no.  Did you catch it?

Q.    Thank you, yes, Doctor.

A.    Okay.

Redacted

Q.    If any of the plaintiffs or proposed class members have any mental or physical illness or problems of any kind, would it be fair to say that you don't have any information and it wasn't within your scope to consider whether they had those problems or issues before they moved into Providence Village?

Page 135

A.    That was outside of my scope up until this time.

Q.    So you would have no opinions about that and didn't consider that because it was outside the scope of what you were asked to do.  Fair statement?

MS. PERRYMAN:  Objection; form.

A.    It is outside the scope of what I have been asked to do up until this point.

Q    (MR. McCLEARY) And you haven't offered any opinions that consider that because that was outside the scope of your assignment.  Fair statement?

MS. PERRYMAN:  Objection; form.

A.    Correct.

Redacted



Redacted

Q.    And because it is not within the scope of what you were asked to do, it would be fair to say it would be speculation on your part as to whether any of the plaintiffs or any of the proposed class members have any -- any mental disorder or mental illness, correct?

MS. PERRYMAN:  Objection; form.

A.    Can you restate the question, please.

Q    (MR. McCLEARY) Yes.  Because it was not within the scope of what you have been asked to do and not within the scope of the work you have done in the case, it would be speculation on your part as to whether any individual plaintiff or proposed class member had any mental disorder or mental illness of any kind, correct?

MS. PERRYMAN:  Objection; form.

A.    I will restate it in a way that makes sense to me.  My scope up until this point does not include any diagnosis or opinion related to the plaintiffs' conditions as individuals.

Q    (MR. McCLEARY) And because of that, it would be speculation as to whether any of the plaintiffs or proposed class members currently have any mental disorder or mental illness, correct?

MS. PERRYMAN:  Objection; form.

A.    Can you restate that.

Q    (MR. McCLEARY) Yes.  As a result, it would be speculation on your part as to whether any of the plaintiffs in this case or potential class members have experienced any mental disorder or mental illness, correct?

A.    It is the wording and you use the word speculation that is throwing me a bit.  I can say accurately that at this point, I don't have an opinion and have not done the sorts of evaluation that would allow me to have an opinion related to mental health conditions of the plaintiffs in this case, that is correct.

Q.    And as a result of that, if you were to offer an opinion at this time, and I understand that you are not, but if you were to offer such an opinion at this

time, it would be based on pure speculation as we sit here today, correct?

MS. PERRYMAN:  Objection; form.

A.    I would not offer an opinion because I haven't done what would be necessary in order for that to happen.

Q    (MR. McCLEARY) And so do you have an issue with the word speculation in my question, Doctor?

A.    No, it is a hypothetical that to me does not make sense because I would not offer an opinion.  In order for me as a professional to offer an opinion, I would have to have some sort of evaluation of these individuals and I haven't done that.  So there is not a circumstance where at this point, based on what I have done up until this time, that I would offer the kinds of opinions that I understand that you are referring to in your question.

Q.    And you wouldn't do it because you haven't been asked to do it and it would be based on speculation if you did offer such an opinion at this time, correct?

MS. PERRYMAN:  Objection; form.

A.    Again, I wouldn't do it because I cannot form an opinion about an individual based on what I have done up until this point.

Redacted



Redacted

Q.    Okay.  And here again you obviously have not diagnosed any of the plaintiffs or potential class plaintiffs in this case with PTSD or anything else, true?

A.    Correct, not at this time.

Redacted



Page 145

Redacted

Redacted

Q    (MR. McCLEARY) And you don't have an opinion about the extent to which any exposure or trauma could have a layered compounding effect on any of the individual plaintiffs in this case or class members in this case, potential class members, correct?

A.   I don't have any opinion at this time about individual class members of this case as I have not evaluated them because it was outside of the scope.

Page 146

Q.   Including then whether any exposure and any trauma or racism is the subject of the allegations in this case would have contributed or caused a compounding effect of any kind on any of the individuals, you don't have any opinions to that effect in this case, correct?

Redacted

A.   At this time I have not done the evaluations that would be necessary to come to any opinions about individual plaintiffs in this case as it was outside of the scope of my work up until this time.

Q.   And generally what type of harm are you



[REDACTED]

[REDACTED]

Q.   Then, Doctor, further down on this page, there is a reference to, "In connection with trauma and PTSD literature to stress bio markers associated with that including, quote, elevated glucocorticoids or corticoids, see reactive proteins, pro-inflammatory cytokines and neuroendocrine risk indicators," end quote, I may not have pronounced them exactly right, but have I read that correctly?

A.   **Yes.**

Q.   Okay.  And again, just to be clear, you are not by your work in this case and you haven't been asked to opine as to whether any of the plaintiffs in this case have experienced any of those biomarkers, correct?

A.   **Correct.**

Q.   And as we go throughout the review, maybe in the interest of time, when there is discussion about physical biomarkers or potential symptoms from exposure to race-related trauma or any form of discrimination related to race, whether it is housing or otherwise, you are not saying in this review that any of that is specifically experienced by any of the plaintiffs or

prospective class members in this case, correct?

MS. PERRYMAN:  Objection; form.

A.   **That was very long question.  Can you either restate or reword it, please.**

Q   (MR. McCLEARY) Yes.  Just to try to abbreviate some of my examination, I will ask the question to you in this way.

During your 10-page review in this case marked as Exhibit 2, there are numerous references to biomarkers or other physiological symptoms that people may experience in connection with exposure to alleged racism or trauma and including extended to those related even to housing and security.

And so my question is, am I correct that you have not -- you are not testifying that any of the plaintiffs in this case or potential class members have experienced any of those biomarkers or other physical results?

MS. PERRYMAN:  Objection; form.

A.   **I am not testifying about individual plaintiffs at this time as that is outside of the scope of my current consultation in this case.**

Q   (MR. McCLEARY) And when you say that, you said that repeatedly and I appreciate that, but you include within the scope of not testifying about any individual



plaintiffs that they have not experienced, for example, any increase or any diagnostic level, if you will, of biomarkers from exposure of stress, that would be one of the things included in that statement, correct?

A.   **I can't testify that they have or that they have not.  I can't testify to either side of that question because it was outside of the scope of my evaluation.**

Q.   Fair enough.  And that would be the case with respect to any physical symptoms or markers or characteristics discussed in your report, true?

A.   **It is correct that I cannot testify to whether they have or whether they have not as that is outside of the scope of my evaluation up until this point.**

Redacted

Q.   (MR. McCLEARY) Doctor, we are back on the record.  Do you understand that?

A.   **Yes.**

Q.   As a bit of housekeeping, earlier in the deposition we were discussing the DSM-5.  Do you remember that generally?

A.   **Yes.**

Q.   And can you identify Exhibit 6 to your deposition as a true and correct copy of excerpts from the DSM-5?

        MS. PERRYMAN:  Objection; form.

A.   **That's certainly the cover.  I can't say that I have committed it line to line by memory, but to the symptoms that are there seem right.**

Q.   (MR. McCLEARY) Okay.  You don't have any reason to believe these are not excerpts from DSM-5 as you sit here today, fair enough?

A.   **Fair enough.**

Q.   And you have not reviewed DSM-5 and you are not applying that to the reviews or work you did in this case, correct?

        MS. PERRYMAN:  Objection; form.

A.   **I have not applied the DSM-5 to any individuals or plaintiffs in this case as that is outside of the scope.  It would not be accurate to say I haven't**

**reviewed DSM-5.**

Q.   (MR. McCLEARY) And by that I meant just specifically in reference to your work in this case or as to any of the plaintiffs, you have not reviewed DSM-5, correct, in connection with your specific work in this case or as to any specific plaintiffs, correct?

A.   **As to any specific plaintiffs, I have not.  I mean, of course my background, knowledge as a psychiatrist which would include review of this is going to inform really any sort of mental health consults I do.**

Redacted





Redacted

[redacted]

Q   (MR. McCLEARY) Turning again to your report, and we are on page 5 of 14 of your report.

Again, there is discussion about midway down about the possibility of exposure to racial

discrimination leading to the elevation in cortisol levels, increased inflammatory markers, overloads to the immune system, impact on the allostatic load.

Again, these are all things that you have not evaluated and are not offering an opinion that any of the plaintiffs have experienced in this case, correct?

A.   At this time I am not able to offer an opinion one way or the other for the plaintiffs in this case as that is outside of the current scope.

Q.   And the same thing would apply to whether the plaintiffs or any of the prospective class plaintiffs have experienced an impact on brain functioning or an increase in any risk of depression, anxiety or psycho traumatic stress, correct?

A.   What's the actual question?

Q.   You haven't been asked to evaluate and you are not offering any opinions in this case as to whether any individual plaintiffs or members of the prospective class have experienced any impact to bring functioning or depression, anxiety or post-traumatic stress or increased risk of the same in this case, correct?

MS. PERRYMAN:  Objection; form.

A.   I have not been asked to evaluate or offer an opinion on individual plaintiffs in this case in any way given the current scope of the consultation.

Redacted

[redacted]



Page 161

Redacted

Q    (MR. McCLEARY) And turning to the next page, page 6, and again, I apologize, this may seem a little redundant but I just need to make clear for the record, you will see at the top of page 6 of your report there is a reference to a link between racial trauma and a host of issues and it lists a host of issues.  Do you

Page 162

see that?

A.   Yes.

Q.   And once again, you are not here to quantify the link in any way or to suggest that any of the plaintiffs in this case or potential class members have experienced any of those issues, correct?

Redacted

A.   At this time I do not have specific opinions related to any of the plaintiffs or class members as that is outside of the current scope of my consultation in this case.

Q    (MR. McCLEARY) Including with respect to any of them having a, quote, biological impacts whether central nervous system, endocrine, metabolic, immune, cardiovascular or interpersonal consequences, whether conduct problems, adjustment problems, externalizing problems, difficulty in romantic relationships or cognitive effects, whether internalizing problems, self-esteem socioeconomic consequences, whether maintaining -- difficulty maintaining a job, unemployment, poverty or whether major long-term health impacts such as diabetes, hypertension, endocrine, cardiovascular illness and mental health concerns including depression, anxiety, PTSD, substance abuse, suicidal ideation and behaviors in addition to premature

Page 163

death.

Do you see all those references in this paragraph to issues?

A.   I see all the references to issues in the paragraph, yes.

Q.   And to be clear then, you are not offering an opinion that any of the plaintiffs or any of the prospective class member plaintiffs have experienced or are likely to experience any of those issues, correct?

MS. PERRYMAN:  Objection; form.

A.   I am not offering an opinion either way.  They may have, they may have not.  I have not done an evaluation that would allow me to have an opinion about the presence or absence of any of these things based on the scope of my current consultation in this case.

Q    Redacted



 LEXITAS

Redacted

Q.   If we go to the summary, that's on the last

page -- well, it looks like page 10 of 14 of your report; is that correct?

A.   **Scrolling down, yes.**

Q.   And in your summary, you state that there is an ample scientific -- strike that.

In your summary of your review, you state, quote, "There is ample scientific literature published in reputable peer reviewed journals and texts that compellingly quantifies and characterizes a multitude of mental and physical harms from racial discrimination," end quote.  Have I read that correctly?

A.   **You have read that correctly.**

Q.   And to be clear, in saying that, this is a reference to mental and physical harms that -- that may result from racial discrimination, but you are not suggesting in your report that they have resulted in mental or physical harms to the plaintiffs or the class -- potential class plaintiffs in this case, correct?

Redacted

A.   **In this --**

Q    (MR. McCLEARY) Correct?

A.   **In this report, I am not saying that they have or that they have not.  As in this report, I am not making any specific claims or offering any specific**

**opinions related to the plaintiffs as that is outside of the scope.**

Q.   Redacted



Page 169

Redacted



Q    (MR. McCLEARY) Doctor, your role in this case was not to address any of the liability issues.  Would that be a fair statement?

Redacted

Redacted

Q.    And to be clear, as you sit here today, you don't have any opinion that any of the plaintiffs have experienced online racial discrimination in this case; is that correct?

A.    **I do not have an opinion about whether they did or did not experience online racial discrimination in this case as that is currently outside of my scope.**

Redacted

Page 170

A.    **At this time addressing the liability issues would be outside of my scope.**

Q    (MR. McCLEARY) In other words, you haven't been asked to address and you haven't offered any review or opinions to the effect that any of the plaintiffs or potential class plaintiffs have been exposed, if at all, to any form of discrimination as you sit here today, correct?

Redacted

A.    **Again, I cannot have an opinion one way or the other for that question given the current scope of my consultation in this case.**

Q



Q.    Doctor, have you seen the rental rules that are the subject of this litigation?

Redacted

A.    **I believe that some of them were referenced in the complaint.  So to the extent that they were referenced there, yes; to the extent that they were not, no.**

Q    (MR. McCLEARY) And, Doctor, based on your reviews, would it be fair to say that you are not able to identify any peer-reviewed study that concludes that blacks or other minorities faced with a no Section 8 voucher restriction or any other rental rules involved in this case were more likely than not to experience a mental or physical disorder or impact of any kind?

Redacted

A.    **Can you restate the question, please.**

Q    (MR. McCLEARY) Sure.  Is it fair to say, as you sit here today, you are not able to identify any peer-reviewed study that concludes that blacks or other minorities faced with a no Section 8 voucher restriction or any of the other rental rules involved in this case are more likely than not to experience a mental or physical disorder or issue of any kind?



LEXITAS



A.    I am not aware of a study in a peer-reviewed article specifically related to Section 8 exclusion.

Q.    Or any other rental restrictions?

A.    Or rental restrictions.

Q.

Page 193

Redacted

████████████████████████████████
████████████████████████████████
█████████████████████████████
█████████████████████████████
█████████
████████████████████████████

THE VIDEOGRAPHER:  Going off the record ending the deposition.  The time is 3:55 PM.

(Proceedings concluded at 3:55 PM.)

---

Page 195

I, DR. SARAH VINSON, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_____

DR. SARAH VINSON

THE STATE OF _____)
COUNTY OF _____)

Before me, _____, on this day personally appeared DR. SARAH VINSON, known to me (or proved to me under oath or through _____) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office on this _____ day of _____, _____.

_____

NOTARY PUBLIC IN AND FOR

THE STATE OF _____

COMMISSION EXPIRES:_____

---

Page 194

CHANGES AND SIGNATURE

WITNESS: DR. SARAH VINSON        DATE: APRIL 6, 2026

PAGE LINE            CHANGE                REASON

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

---

Page 196

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

DEWANNA JOHNSON, SHEILLA    )
NATHAN, ALONZO TUTSON, EVORA )
SYKES, CHANELL HOBBS REVISHA )
SILAS, EVETTE TOWNSEND,      )
                             )
     Plaintiffs,             )
                             ) CIVIL ACTION NO.
VS.                          ) 4:25-CV-00418-ALM
                             )
PROVIDENCE HOMEOWNERS        )
ASSOCIATION, FIRSTSERVICE    )
RESIDENTIAL TEXAS, INC.,     )
                             )
     Defendants.             )

REPORTER'S CERTIFICATE
ORAL AND VIDEOTAPED DEPOSITION OF
DR. SARAH VINSON
APRIL 6, 2026

I, Nyree-Dawn Lloyd, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, DR. SARAH VINSON, was duly sworn by the officer and that the transcript of the deposition is a true record of the testimony given by the witness;

That the original deposition transcript was delivered to Roger L. McCleary;

That a copy of this certificate was served on all parties and/or the witness shown herein on _____.



Page 197

I further certify that, pursuant to FRCP No. 30(f)(i), that the signature of the deponent was requested by the deponent or a party before the completion of the deposition and that the signature is to be returned within 30 days from date of receipt of the transcript.  If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes counsel for all parties of record and the amount of time used by each party at the time of the deposition:

Ms. Amira Perryman (0 hours 18 minutes)
        Attorney for Plaintiffs

Mr. Roger L. McCleary (4 hours 19 minutes)
        Attorney for Defendant, FIRSTSERVICE
        RESIDENTIAL, TEXAS, INC.

Mr. Gene Baldonado (0 hours 0 minutes)
        Attorney for Defendant, PROVIDENCE HOA

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 13th day of April, 2026.

Page 198

Nyree-Dawn Lloyd, CSR, RPR
Texas CSR 11442
Expiration Date: 11/30/2026
HOUSTON LEXITAS
13101 NORTHWEST FREEWAY
SUITE 210
HOUSTON, TEXAS 77040
(281)469-5580
Firm Number 95 Expires:
1/31/2027

(888) 893-3767
www.lexitaslegal.com

Lexitas operates in all 50 states and is licensed where required
Nevada Registration #116F  -  California Firm Registration #179

LEXITAS