**IN THE UNITED STATES DISTRICT COURT**
**THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **DEWANNA JOHNSON *ET AL.*** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CASE NO. 4:25-CV-00418** |
| | § | |
| **PROVIDENCE HOMEOWNERS** | § | **JURY DEMAND** |
| **ASSOCIATION, FIRSTSERVICE** | § | |
| **RESIDENTIAL TEXAS, INC.** | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF JOINT MOTION TO STRIKE DR.**
**SARAH VINSON'S TESTIMONY**

TO THE HONORABLE COURT:

Defendants FirstService Residential Texas, Inc. ("FirstService") and Providence Homeowners Association, Inc. ("PHOA"), (collectively, "Defendants") file this reply ("Reply") to Plaintiff's Response in Opposition to Defendants' Joint Objections and Motion to Strike the Expert Opinion of Dr. Vinson [Dkt. 118] ("Response"), and would respectfully show as follows:

1.    Plaintiffs' Response contends that Dr. Vinson's expert opinion that "exposure to online and in person racism of the type described in the Complaint can cause mental and physical harms" is purportedly reliable, relevant, and helpful to the jury. *See* Response, p. 7. Plaintiffs' Response misses the mark and fails to meet Plaintiffs' burden.

2.    While alleged "racial harassment" from social media is clearly still at issue in this case, the question for this Court is whether Dr. Vinson's opinion, *i.e.*, that is, whether in person and online "racial discrimination" can cause mental and physical harms, in general, should be permitted in this case to bolster Plaintiffs' claims that each one of the Plaintiffs allegedly sustained mental and physical harm from exposure to the specific social media posts. Defendants

respectfully submit the answer is clearly in the negative.

3.     In sum, Dr. Vinson's "literature review" does not even attempt to tie any of the alleged social media posts to any of the specific Plaintiffs in this case. Indeed, Plaintiffs now admit that Dr. Vinson is *not* going to be providing an opinion on causation. *See* Response, p. 3 ("While she does not opine on whether the racial discrimination alleged here actually caused the Plaintiff's injuries, she provides medical expertise and explains scientific literature describing the connection between discrimination and physical and psychological outcomes generally."). If Dr. Vinson is not going to testify regarding causation, then why is she testifying?

4.     For an expert opinion to be considered at trial, it must be both relevant and reliable. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("[E]xpert testimony is admissible only if it is both relevant and reliable."). In addition, expert testimony must be helpful to the trier of fact. *Green Acres Baptist Church, Inc. v. Bhd. Mut. Ins. Co.*, No. 6:23-cv-566-JDK, 2025 U.S. Dist. LEXIS 4882, at *4 (E.D. Tex. Jan. 10, 2025) ("[H]elpfulness to the trier of fact is its touchstone.").

5.     Here, Dr. Vinson's proffered opinions are not relevant, and Plaintiffs' Response does not carry their burden to demonstrate otherwise. Dr. Vinson's literature review and background on racism may be useful in academia, but her offered testimony does not make any fact at issue in this case (*i.e.*, whether any of the Plaintiffs experienced mental or physical harm from the social media posts) more or less likely, and it does not assist the trier of fact.

6.     Similarly, none of the case law cited by Plaintiffs support the proposition that a mere literature review by a medical expert on the general connection between alleged racism/discrimination and mental and physical harm is sufficient, standing on its own, to be considered reliable and relevant in the FHA context. Dr. Vinson's opinions are not merely a

"macro level analysis" of exposure to discrimination or racism for this potential class action.[1] Thus, the dicta in *Anson v. City of Delton*, 2025 U.S. Dist. LEXIS 275417, at * (M.D. Fl. Nov. 24, 2025) regarding a "macro level analysis" is unhelpful. Further, unlike the expert in *Cortez v. Lamorak Ins. Co.*, 2022 WL 3595154 (E.D. La. Aug. 23, 2022), Dr. Vinson did not merely consult literature in forming her opinions; instead, her opinion is a literature review. Finally, Plaintiff's reliance upon *Montgomery v. Parker Towing Co.*, No. 07-3218, 2008 U.S. Dist. LEXIS 14532, at *1 (E.D. La. Feb. 25, 2008) is misplaced because the expert in that case was testifying as a causation/safety expert for the plaintiff's particular injury.

7.      Further, Dr. Vinson is not even offered as a causation expert. Indeed, this is not a case where "general" expert testimony, even if Dr. Vinson was providing such on this subject, could provide support for a causal connection since the analysis is entirely subjective: *i.e.*, whether the social media posts were discriminatory (or racially made) is, of course, a subjective inquiry depending on the state of mind of both the poster and the recipient. Indeed, the jury will receive no help from Dr. Vinson on "understanding *the effects* of racial discrimination of the kind alleged," as each Plaintiff's circumstances, including alleged exposure to the social media posts and their alleged harms, are also unique, subjective, and fact specific. Dr. Vinson's failure to account for each Plaintiff's own exposure and own resulting condition is a fatal flaw in her review (or "analysis") as it relates to this case.

8.      Simply providing "context regarding the facts alleged," is also not enough to permit Dr. Vinson's testimony as an expert, nor is it useful. The Plaintiffs' own attorneys will have the opportunity at trial to provide "context" regarding the facts, including the social media posts, and Dr. Vinson's detached and unhelpful "context" will only serve to confuse the jury and prejudice

---

[1] This Court has also not yet ruled on Plaintiffs' pending motion for class certification. Thus, in the event that this case is not treated as a class action, then Plaintiffs' argument is without merit for this reason too.

the Defendants.

9.      Furthermore, Dr. Vinson's opinions should not be admitted under Federal Rule 403. Dr. Vinson's opinions regarding the "negative impacts" of racism, as expressed in her report, go far beyond simply providing an opinion that there is a purported  "medical connection between the [alleged] racial harassment that Black people experience online and in person, . . . and [the alleged] negative physical and psychiatric outcomes for both adults and minors." Indeed, as a simple example, Dr. Vinson's report goes on at length about the theory of "epigenetics" and how the effects of racism can pass from generation to generation, making it clear that she is opining there more generally about historical racism in the U.S. and what she contends are the attendant effects over time (rather than as to any alleged exposure to racism and alleged harm to the Plaintiffs in this case):

**Epigenetics and Racial Trauma on Development**

The negative impact of racial trauma can compromise Black children's physical and psychological development. ***Experiences of racism often begin in childhood with more than 90% of Black Americans experiencing racial discrimination as early as age eight*** (Priest et al., 2013). ***Black youths (of various agents) experience racial discrimination at higher rates than other racial/ethnic groups in the United States leaving Black adolescents vulnerable to long-lasting physiological and behavioral changes during critical development periods***. For adolescents, experiences of racial discrimination lead to similar physiological changes as adults, including increased cortisol, elevated blood pressure, increased inflammatory markers, increased risk for respiratory issues, and elevated risk of type II diabetes (Shonkoff et al., 2021).

. . .

***Racial trauma is transferable from mother to child*** via distinct changes to mitochondrial DNA markers and proinflammatory phenotypes (Shonkoff et al., 2021). ***Intergenerational trauma theory acknowledges that the negative impacts of mass traumatic experiences are passed to future generations*** (through physiological, environmental, and social pathways . . . result[ing] in an intergenerational cycle of trauma response, including general medical (e.g., compromised immune system, endocrine impairment, and adrenal maladaptation), social (e.g., domestic violence, child maltreatment, substance abuse, and involvement in crime), and psychological (e.g., depression, panic or anxiety disorders, and post-traumatic stress disorder)" (Hankerson et al. 2022, p. 435).

10.     Simply put, Dr. Vinson's opinions are clearly not – and have not been demonstrated by Plaintiffs to be – a traditional effort to demonstrate an alleged connection between allegedly discriminatory acts and purportedly resulting mental or physical injuries to the Plaintiffs via personal appointments, testing, medical record reviews, diagnosis, *etc.*, by a medical doctor. Dr. Vinson did none of these things. Instead, Dr. Vinson's "opinions" are calculated to inflame and unfairly prejudice the jury against the Defendants based on panoply of "racial trauma" to the subjects of the articles Dr. Vinson cites that is wholly unrelated to the facts of this case. Dr. Vinson's opinions will not provide helpful opinion testimony regarding a fact in issue in this case and Dr. Vinson's opinions should not be permitted under Federal Rule 403.

11.     Accordingly, Defendants respectfully submit that Plaintiffs' arguments should be rejected, and the Court should strike the opinions and testimony of Dr. Sarah Vinson in their entirety.

Respectfully submitted,

/s/ Roger L. McCleary_____
Roger L. McCleary
(SBOT: 13393700)
rmccleary@pmmlaw.com
James C. Burnett (SBOT: 24094025)
jburnett@pmmlaw.com

PARSONS MCENTIRE MCCLEARY PLLC
One Riverway, Suite 1800
Houston, Texas 77056
(713) 960-7315 (Telephone)
(713) 960-7347 (Facsimile)

**COUNSEL FOR DEFENDANT
FIRST SERVICE RESIDENTIAL
TEXAS, INC.**

/s/_David A. Talbot_*_____

5

Sarah R. Smith (SBOT: 24056346)
Sarah.Smith@dinsmore.com
David A. Talbot (SBOT: 24037580)
David.Talbot@dinsmore.com

DINSMORE
JPMorgan Chase Tower
600 Travis St., Suite 7350
Houston, Texas 77002
Telephone: 346-293-7878
Facsimile: 346-293-7877

**COUNSEL FOR DEFENDANT
PROVIDENCE HOMEOWNERS
ASSOCIATION, INC.**

*Signed by Permission

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record has been served with the foregoing document though PACER, as authorized by the Federal Rules of Civil Procedure on this 18th day of May 2026.

*/s/ Roger L. McCleary*_____
Roger L. McCleary

3229516.2

6