**IN THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **DEWANNA JOHNSON *ET AL.*** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CASE NO. 4:25-CV-00418** |
| | § | |
| **PROVIDENCE HOMEOWNERS** | § | **JURY DEMAND** |
| **ASSOCIATION, FIRSTSERVICE** | § | |
| **RESIDENTIAL TEXAS, INC.** | § | |
| | § | |
| *Defendants.* | | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF JOINT MOTION TO STRIKE DR.
SHANNON VAN ZANDT'S TESTIMONY**

TO THE HONORABLE COURT:

Defendants FirstService Residential Texas, Inc. ("FirstService") and Providence Homeowners Association, Inc. ("PHOA"), (collectively, "Defendants") file this reply ("Reply") to Plaintiffs' Response to Defendants' Joint Objections and Motion to Exclude Expert Testimony of Dr. Shannon Van Zandt [Dkt. 119] ("Response"), and would respectfully show as follows:

1.       Plaintiffs concede that Dr. Shannon Van Zandt's offered opinions 1-2 and 4-7 are no longer relevant in light of the Court's Order granting a dismissal of Plaintiffs' disparate impact claims. *See* Response, p. 3. Further, Plaintiffs concede that their "gender" based discrimination claims are no longer pursued. *Id.* ("[T]here will be no expert testimony by Dr. Van Zandt concerning disparate impact based on gender *because there are no remaining live claims involving gender discrimination*."). Yet, Plaintiffs argue that Dr. Van Zandt's Opinion Number 3 (and the other parts of her opinion, including Background and Disparate Impact) should be permitted because they are purportedly relevant to Plaintiffs' disparate treatment claims. Specifically, Plaintiffs contend that Dr. Van Zandt's opinions concerning the "statistical

disparity of the Section 8" prohibition, primarily found in Opinion No. 3, is still "very relevant to Plaintiffs disparate treatment racial discrimination claims as it provides statistical evidence of the Village of Arlington Heights factor of whether or not Defendants' actions bear more heavily on one race than another." *See* Response, p. 1. The Court should reject this argument, as Dr. Van Zandt's remaining testimony, including Opinion No. 3, is not relevant, not reliable, and not helpful to the finder of fact, and Plaintiff has failed to meet Plaintiff's burden to demonstrate otherwise.

2.      For an expert opinion to be considered at trial, it must be both relevant and reliable. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("[E]xpert testimony is admissible only if it is both relevant and reliable."). In addition, expert testimony must be helpful to the trier of fact. *Green Acres Baptist Church, Inc. v. Bhd. Mut. Ins. Co.*, No. 6:23-cv-566-JDK, 2025 U.S. Dist. LEXIS 4882, at *4 (E.D. Tex. Jan. 10, 2025) ("[H]elpfulness to the trier of fact is its touchstone."). Here, Dr. Van Zandt's remaining opinions are not relevant, reliable, nor helpful.

3.      Dr. Van Zandt's remaining opinions are mainly found in Opinion No. 3, which is set forth, in full, below:

### C.      Robust Causation

Following the framework articulated in *Inclusive Communities Project v. Lincoln Property Co.*, 920 F.3d 890 (5th Cir. 2019), in the sections below, I examine whether the statistical disparities – including the magnitude of disparity ratios – and rental-market effects associated with the policy at issue are sufficiently substantial to support an inference that the policy itself caused the adverse outcomes for the protected class.

The Record that includes the HUD Charge and HUD FIR states the following facts that correspond directly to this causation test:

. . .

### 3. Statistical Disparities Tide to a Protected Class

2

My analysis of HUD data confirms that 92.7% of the voucher households in Providence Village were Black and 6.1% were White at the time the policy was enacted. HUD FIR, p. 91. Using the disparity-ratio formulation suggested by Aigner et al. (2024), the ratio of impact on Black versus White voucher households is 15.2, meaning Black voucher households were 15 times more likely to be affected than White voucher households. Similarly, 94% of voucher households were female-headed, compared to 6% male-headed, producing a female-to-male disparity ratio of 15.7. These ratios far exceed the 1.25 threshold commonly used in disparate-impact evaluation.

Because the policy eliminated all voucher tenancies at once, these disparities translate into a uniform adverse impact on protected groups. The disparity ratios are sufficiently large, stable, and derived from full-population counts to support the inference, under the Lincoln test, that the policy itself, rather than chance or background market conditions, produced the observed racial and gender patterns.[1]

4.    Dr. Van Zandt's proffered Opinion No. 3 suffers from a number of self-evident flaws that render her opinions irrelevant, unreliable and unhelpful.

5.    First, Dr. Van Zandt's Opinion No. 3 is part and parcel of Plaintiffs' "Robust Causation" theory. Indeed, it fits within and is part of the "Robust Causation" Section of Dr. Van Zandt's Report – which is all in the context of Plaintiffs' now dismissed disparate impact claims. As Plaintiffs recognize, the issue regarding what is relevant is "impact" not causation.  Because Opinion No. 3 falls within the causation analysis, it is no longer relevant.

6.    Second, Opinion No. 3 improperly conflates the inference under *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977) with whether the policy itself caused a disparate impact on Black Section 8 Voucher Holders. This is self-evident by the last sentence of the opinion:

The disparity ratios are sufficiently large, stable, and derived from full-population counts to support the inference, under the *Lincoln* test, ***that the policy itself***, rather than chance or background market conditions, ***produced the observed racial and gender patterns***.

Thus, what Dr. Van Zandt contends is that the Section 8 restriction purportedly caused or

[1] Plaintiffs also apparently rely upon the Background Section and Section A, entitled "Disparate Impact on Black Voucher Tenants." These are discussed below.

3

"produce the observed racial [] patterns" – *i.e.*, a disparate impact - on Black Section 8 Voucher Holders. This is likewise set forth in Dr. Van Zandt's "Section A" (entitled Disparate Impact on Black Voucher Tenants). But, again, robust causation is not the standard. Dr. Van Zandt's Opinion Number 3 is essentially a backdoor attempt to opine that the Section 8 Prohibition *itself* caused the alleged terminations of Plaintiffs' leases and Plaintiffs' alleged harm.

7. This conclusion is self-evident by the parroting by Dr. Van Zandt of Plaintiffs' legal theory in this case, that is, that the "*policy eliminated all voucher tenancies at once.*" This fact is clearly not supported by anything but Dr. Van Zandt's *ipse dixit* and is merely legal argument masquerading as expert opinion.

8. Indeed, it is undisputed that the Section 8 Voucher Restriction was almost immediately stayed by the parties, right after it was enacted. Indeed, the Board of PHOA immediately provided a 90-day grace period to all tenancies after its initial enactment, notifying all landlords and tenants that the Board would not enforce it for 90 days. Thereafter, the Board of PHOA and HUD entered into the voluntary stay, staying the Section 8 Prohibition entirely during the three-year investigation by HUD. Later, the Section 8 Prohibition was removed in 2023 when Texas law was changed.

9. Dr. Van Zandt's Opinion Number 3 essentially ignores all these facts, resting on a hypothetical and speculative set of facts that the policy's mere enactment caused an impact on all Black Section 8 Voucher Holders, regardless if they moved away or not. It is, therefore, not reliable and not helpful.

10. Third and finally, Dr. Van Zandt's disparate ratio analysis is irrelevant and unhelpful. The element at issue (as set forth in *Arlington Heights*), is whether the *impact* of the official action, "bears more heavily on one race than another."  429 U.S. at 266. In this case, a

determination of the impact must be based, not on the mere statistical numbers of those living in Providence Village at the time (nor on Dr. Van Zandt's conclusory, improper, and incorrect assumption that "all" leases were "terminated"), but instead must be based on the number of Section 8 Voucher Holders, if any, that were purportedly impacted by the policy. But Dr. Van Zandt simply (and improperly) assumes that all Black Section 8 Voucher Holders were equally affected and impacted by the policy based on Dr. Van Zandt's unreliable (and incorrect) assumption that all leases of all Section 8 Voucher Holders were terminated. *See* Report p. 3 ("As an immediate result of the policy every Section 8 landlord was effectively barred from continuing to lease to voucher tenants regardless of its end date and barred from entering into new leases for voucher tenants."). Dr. Van Zandt makes no attempt to assess the numbers of Black Section 8 Voucher Holders who she contends were actually impacted.

11.    Indeed, it is undisputed that the vast majority of all Section 8 Voucher holders remained in Providence Village and did not move away after the enactment. Further, Dr. Van Zandt has no information in her report on the race of those that stayed and those that moved away. Accordingly, Dr. Van Zandt's disparity analysis is unreliable and not helpful.

12.    Additionally, the lack of reliability of the HUD Charge, Determination of Reasonable Cause, and FIR are further demonstrated by the undisputed fact that on February 21, 2025, HUD's Office of General Counsel withdrew the referral of HUD case to the Department of Justice. *See* Exhibit 1 to this Reply.

Accordingly, Defendants respectfully submit that Plaintiffs' arguments should be rejected, and the Court should strike Dr. Van Zandt's testimony in full.

Respectfully submitted,

*/s/ Roger L. McCleary*
Roger L. McCleary

5

(SBOT: 13393700)
rmccleary@pmmlaw.com
James C. Burnett (SBOT: 24094025)
jburnett@pmmlaw.com

PARSONS MCENTIRE MCCLEARY
PLLC
One Riverway, Suite 1800
Houston, Texas 77056
(713) 960-7315 (Telephone)
(713) 960-7347 (Facsimile)

**COUNSEL FOR DEFENDANT
FIRST SERVICE RESIDENTIAL
TEXAS, INC.**

*/s/  David Talbot* *_____
Sarah R. Smith (SBOT: 24056346)
Sarah.Smith@dinsmore.com
David A. Talbot (SBOT: 24037580)
David.Talbot@dinsmore.com

DINSMORE
JPMorgan Chase Tower
600 Travis St., Suite 7350
Houston, Texas 77002
Telephone: 346-293-7878
Facsimile: 346-293-7877

**COUNSEL FOR DEFENDANT
PROVIDENCE HOMEOWNERS
ASSOCIATION, INC.**

*Signed by Permission

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record has been served with the foregoing document though PACER, as authorized by the Federal Rules of Civil Procedure on this 18th day of May 2026:


*/s/ Roger L. McCleary*
Roger L. McCleary

3229462

6