# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DEWANNA JOHNSON, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-418 |
| | § | Judge Mazzant |
| FIRSTSERVICE RESIDENTIAL | § | |
| TEXAS, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Class Certification (Dkt. #37) (the "Motion"). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

The Court incorporates the background of its January 5, 2026 Memorandum Opinion and Order here by reference (Dkt. #88). In pertinent part, this Fair Housing Act case centers on whether Providence Homeowners Association ("Providence HOA"),[1] and its property manager, FirstService Residential Texas, Inc. ("FirstService"), enacted a Section 8 voucher ban and other rental restrictions in Providence Village with discriminatory intent towards black tenants.

Plaintiffs move to certify a damages class under Federal Rule of Civil Procedure 23(b)(3). The Motion is fully briefed (Dkt. #37; Dkt. #53; Dkt. #61; Dkt. #74). The Court held a class certification hearing on July 20, 2026, then took the matter under advisement.

The Motion is now ripe for adjudication.

---

[1] Providence Homeowners Association has now settled (Dkt. #139).

## LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Kincannon v. United Airlines, Inc.*, 168 F.4th 713, 721 (5th Cir. 2026) (citation modified). A class action may be certified only if Federal Rule of Civil Procedure 23(a)'s requirements are satisfied and the class fits within the confines of Rule 23(b). Rule 23(a) provides the following prerequisites to certification:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

Rule 23(b) provides the permissible types of class actions. Here, Plaintiffs seek to certify a class under Rule 23(b)(3). Rule 23(b)(3) permits certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The "matters pertinent to these findings" include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* 23(b)(3).

Rule 23 "does not set forth a mere pleading standard." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020) (citation modified). Instead, "a party seeking class certification

must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, and so on." *Id.* at 545–46 (citation modified).

**ANALYSIS**

Plaintiffs have not carried their burden to affirmatively demonstrate that Rule 23's requirements are met. Class certification will therefore be denied.

## I.      The Proposed Class and Class Representatives

Plaintiffs propose certifying "a Fed. R. Civ. P[.] 23(b)(3) class of voucher tenants residing in [Providence HOA] and injured by [FirstService's] policies and actions for whom an award of damages is sought" (Dkt. #37 at p. 3). During the class certification hearing, Plaintiffs' counsel refined the class to consist of: all voucher tenants who reside or resided in Providence HOA at the time of the enactment of the June 2022 ban on vouchers and other rental restrictions and who were injured by that ban on vouchers or the rental restrictions or by the racially hostile living environment for whom an award of damages is sought.[2] Plaintiffs Sheilla Picon ("Picon") and Dewayne Johnson ("Johnson") seek to represent the putative class.[3]

Picon is a former voucher tenant who lived in Providence Village. At the class certification hearing, she testified that after Providence HOA enacted a ban on rentals to voucher holders in June of 2022, her landlord informed her and her family that they needed to move. She testified that she incurred out-of-pocket expenses related to moving out and suffered emotional distress. Picon

---

[2]  The Court assumes, without deciding, that Plaintiffs' announcement at the class action hearing constituted a proper amendment of the class definition. Distinctions between the definitions do not alter the Court's analysis here.

[3]  The operative complaint names "Sheilla Nathan (formerly Tuson)" and "Dewanna Johnson" as plaintiffs, and does not name a "Sheilla Picon" or a "Dewayne Johnson," like the witness list submitted at the class certification hearing (Dkt. #141). The Court relies on the latter because it was filed more recently. Additionally, when the Court uses the terms "Plaintiffs," it refers to all named class members in the lawsuit, which includes seven members total.

also testified that racist social media posts in Providence Village online groups contributed to her emotional distress. To redress the harm alleged, Picon seeks compensatory and punitive damages.

Johnson also testified at the class certification hearing. She is a former voucher tenant who ended up purchasing her home in Providence Village following several unsuccessful attempts to find a place outside of Providence Village that accepted voucher tenants. She testified that, after experiencing the effects of the ban and witnessing racist social media posts in Providence Village online groups, she felt disgusted, hurt, and like she was not good enough to live in Providence Village. Like Picon, Johnson seeks compensatory and punitive damages.

The Court now turns to whether class certification is appropriate here.

## II.    Rule 23(b)(3)

The Court starts with the most significant hurdle to certification in this case: Rule 23(b)(3)'s requirement of predominance. Because predominance is not satisfied here, certification would be unwarranted even assuming that Rule 23(a)'s requirements are met. *See, e.g.*, *Galitski v. Samsung Telecomms. Am., LLC*, No. 3:12-CV-4782-D, 2015 WL 5319802, at *5 (N.D. Tex. Sept. 11, 2015) ("The failure to satisfy the predominance requirement is sufficient . . . to warrant denying class certification.").

Rule 23(b)(3) permits certification only when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

To establish predominance, "the party moving for certification must show that the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Kincannon*, 168 F.4th at 724 (citation modified). This requires the movant "to demonstrate that common

questions are more prevalent or important than individualized questions." *Id.* (citation modified). An individual question relies "on evidence that varies from member to member," while a common question "is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (citation modified). Predominance may be found when "one or more of the central issues in the action are common to the class," even when "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

In their Motion, Plaintiffs argue that the following common questions predominate over individual ones: "factual and legal claims concerning Defendants' enactment of the PHOA voucher ban and rental restrictions and the failure to address the racially hostile environment" and the "legal issues of whether the Defendants' actions violate the FHA by intentionally discriminating on the basis of race, as found by HUD's Charge, predominate" (Dkt. #37 at p. 20). They also propose bifurcating the proceedings into a liability phase and then "[a]dditional subclasses and bifurcation of damages after determination of liability" (Dkt. #37 at p. 22).

In its response, FirstService argues that liability cannot be established classwide due to individual causation questions. It also argues that the question of discriminatory intent does not predominate over individual questions regarding causation and damages. In Plaintiffs' reply, they argue that individual causation and damages issues "will not require an individualized inquiry," because the challenged voucher ban "automatically and categorically interfered with the obligations of each voucher lease in force when the policy was adopted" (Dkt. #61 at p. 17).  Plaintiffs also suggest that the Court divide the tenant classes based on whether the tenants moved out or not.

In its sur-reply, FirstService argues that a finding that the voucher ban was discriminatory does not establish classwide liability, because, for example, that finding "would not resolve voucher claimants['] liability claims that are dependent on any findings regarding social media harassment or the existence of a hostile environment" (Dkt. #74 at p. 15).

### A.    Common questions do not predominate.

Under the facts of this case, the Court finds that Plaintiffs did not carry their burden to show predominance. Crucial individual questions of causation and damages predominate over common questions, so class certification will be denied.

#### 1.    Causation

A Fair Housing Act violation occurs when a person makes housing "unavailable . . . to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Because the voucher ban was quickly stayed, and then amended, a key dispute in this case is whether the voucher ban actually caused housing to become unavailable to voucher tenants. At the class certification hearing, Plaintiffs conceded that not all voucher tenants that moved out shortly after the voucher ban or amended rules did so because of those policies. Thus, determining whether discrimination caused housing to become unavailable to black voucher tenants necessitates delving into the particular circumstances of each voucher tenant and their communications with their landlords. In other words, the "success of these [Fair Housing Act] claims will turn ultimately on the special circumstances of each individual's case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998). Individual causation questions would become a key focus at trial, counseling against a finding of predominance.

The Fair Housing Act also makes it unlawful to discriminate "in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or

national origin." 42 U.S.C. § 3604(b). Plaintiffs argue that liability does not require individual adjudication because the voucher ban automatically affected lease obligations. The Court construes this argument to mean that liability under § 3604(b) does not require a showing that discrimination caused actual damages. But Plaintiffs did not propose a class definition that distinguishes between tenants entitled to recovery under § 3604(a), which requires a finding that housing became "unavailable," and those entitled to recovery under § 3604(b), which does not use that same language. Nor did Plaintiffs explain how their hostile housing environment and similar theories fit into the picture. Even if the Court could devise a single phase of trial that establishes classwide causation based on the voucher ban and amended rules, that would not, by itself, establish entitlement to any damages arising out of social media posts or other harassment or retaliation.

Plaintiffs' decision to lump together materially distinct liability theories with differing causation requirements into one class definition—without a detailed bifurcation or issue-certification plan—helps persuade the Court that predominance poses too great a barrier to certification here (*See* Dkt. #11 at p. 45 ("The . . . proposed class is the Fed. R. Civ. P[.] 23(b)(3) class is [sic] of voucher tenants residing [in] PHOA who were and are impacted by the bank [sic] on vouchers and/or the rental restrictions and/or the racially hostile living environment in for the award of damages")). Class certification is therefore unwarranted.

### 2.    Damages

Even accepting the premise that liability can be established classwide without resolving individualized questions, predominance would still be absent. Plaintiffs seek "[c]ompensatory damages, including damages for emotional distress, and punitive damages" on behalf of the class (Dkt. #11 at p. 50). Causation issues aside, important individual questions relating to the amount of compensatory damages cast further doubt on predominance. Plaintiffs seek out-of-pocket costs

7

allegedly caused by the discriminatory rental policies, as well as emotional distress damages tied to those rental policies and racial harassment. The out-of-pocket expenses cannot be determined on a classwide basis because different tenants incurred different costs by moving out of their homes. Moreover, some voucher tenants, like Johnson, did not move out of Providence Village, and thus incurred different types of expenses from the tenants that did move out. Accordingly, the out-of-pocket expenses are not largely susceptible to classwide resolution. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) ("[W]here individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues . . . ."). *Cf. Kincanon*, 168 F.4th at 732 (acknowledging "tension" in the case law regarding the requirement that damages be susceptible to classwide adjudication but affirming certification when damages were "largely" measurable classwide).

As to compensatory damages arising from emotional distress, "[t]he very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy." *Allison*, 151 F.3d at 417.[4] Emotional distress damages may be particularly individualized under the facts of this case. Both proposed class representatives testified that part of their emotional distress arose from seeing racist social media posts in Providence Village online groups. Telling the story of how each individual voucher tenant was affected by the rental policies and social media posts—sufficiently to support a meaningful award of emotional distress damages—will be the heart of trial. Common questions therefore do not predominate over individual ones here.

---

[4]  This part of *Allison* discussed emotional distress damages when analyzing a Rule 23(b)(2) class, not a Rule 23(b)(3) class. But in *Exxon Mobil*, 461 F.3d at 602, the Fifth Circuit quoted *Allison*'s discussion of emotional distress damages when affirming a district court's order denying certification of a Rule 23(b)(3) class. In the same spirit, the Court quotes *Allison* here because it aptly describes the individualized nature of emotional distress damages.

### 3.    Plaintiffs' Proposed Management Plan

Plaintiffs have made some efforts to address predominance concerns. At the class certification hearing, they briefly proposed bifurcating liability and damages, with one classwide liability phase, and multiple damages phases covering different sets of tenants, such as groups of twenty at a time. In their Motion, Plaintiffs propose "[a]dditional subclasses and bifurcations of damages issues after determination of liability," without specifying what those subclasses would be (Dkt. #37 at p. 22). In their reply to FirstServices's opposition, Plaintiffs also state that the Court could divide the damages groups based on which tenants moved out and which ones stayed.

The proposed management plan does not serve as "a remedy for the obstacles preventing a finding of predominance in this case." *Exxon Mobil*, 461 F.3d at 603. To start, the "liability" phase of trial would not establish liability classwide across Plaintiffs' claims. As discussed, § 3604(a) requires housing to become "unavailable" based on discrimination, so discrimination alone would not establish liability. Thus, adjudicating the § 3604(a) claims would not be as simple as conducting one liability phase and then using multiple damages phases to determine the precise amount of damages for each class member. A damages phase focused on tenants that moved out of Providence Village after the voucher ban or amended rules would "degenerat[e] into a series of individual trials," *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)—focused on the communications between individual landlords and their tenants, the timing of when the tenants moved out, and the reason why they moved out. In other words, as the Court has explained, the "damages" phases would need to determine not only the amount of damages, but also causation (whether the voucher ban and amended rules made housing "unavailable" to particular tenants under § 3604(a)). And Plaintiffs provided no explanation about whether a cohesive damages phase

9

could adjudicate § 3604(b) damages. Nor did Plaintiffs propose a trial plan for certifying different classes based on whether a tenant is entitled to recovery under § 3604(a) or § 3604(b).

Plaintiffs point to cases where district courts did not abuse their discretion in certifying a class while bifurcating individual issues. *See, e.g.*, *In re Deepwater Horizon*, 739 F.3d 790, 816 (5th Cir. 2014). But those cases "involved single episodes of tortious conduct usually committed by a single defendant." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016). Here, Plaintiffs seek damages relating to two different policies—the original voucher ban and the amended rules—which were in effect at different points in time. And although FirstService is the only defendant that remains in the case, former defendant Providence HOA enacted the challenged rental policies, and Providence Village residents engaged in the conduct that Plaintiffs allege created a hostile environment, alongside Providence HOA board members. Many actors are therefore implicated, undermining a finding of predominance. *Id.* at 379 (affirming finding that individual causation and damages issues predominated because the plaintiffs sought "to recover different damages caused by different acts committed by different defendants at different times.").

\* \* \*

In sum, the Court does not find that common issues predominate. To the extent that limited issue classes or a multiphase trial could alleviate the lack of predominance,[5] Plaintiffs did not

---

[5] The Court need not reach the issue of whether Fifth Circuit precedent allows the Court to certify an issue class without a finding that common issues predominate as to the entire case or an entire cause of action. *See* Newberg and Rubenstein on Class Actions § 4:90 (6th ed.) (collecting cases and concluding that "there is now widespread consensus in support of the broad view that common questions need not predominate in an entire lawsuit or cause of action in order for certification to be proper."); *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 319 (5th Cir. 2024) (collecting cases, including *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745–46 n.21 (5th Cir. 1996), and discussing the issue); *Castano*, 84 F.3d at 745–46 n.21 ("[A] cause of action, as a whole, must satisfy the predominance requirement of [Rule 23] (b)(3)."). Here, Plaintiffs did not provide a sufficient management plan to alleviate the lack of predominance, so it is unnecessary to delve into whether the import of *Castano*'s footnote has indeed "dwindled" in light of "subsequent caselaw from the Fifth Circuit." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 274 (3d Cir. 2021) (citing *Exxon Mobil*, 461 F.3d at 603).

10

propose a sufficient management plan to do so here. The Court exercises its discretion not to devise its own. *Exxon Mobil*, 461 F.3d at 603–04 ("[W]hen the parties moving for class certification have full opportunity to present to the district court proposals for their preferred form of class treatment, the district court is under no obligation to *sua sponte* consider other variations not proposed by any party."). Class certification will therefore be denied.

### B.  Superiority has not been demonstrated.

After considering the record, the Court finds that a lack of superiority also warrants the denial of certification. *See Exxon Mobil*, 461 F.3d at 604 (explaining that predominance and superiority are independent requirements despite their close relationship). The predominance of individual issues "detracts from the superiority of the class action device." *Allison*, 151 F.3d at 419.

Additionally, the insufficiency of Plaintiffs' trial plan creates manageability problems with the class as defined, which weighs against a finding of superiority. *See, e.g.*, *Woodard v. Andrus*, 272 F.R.D. 185, 196 (W.D. La. 2010) ("Although submission of a workable trial plan is not a prerequisite for a finding of superiority, . . . a district court must possess sufficient information regarding how a trial on the alleged causes of action would be tried." (citation modified)).[6]

Here, even though individual claims would rely on shared evidence of discriminatory intent, the Court finds that superiority has not been shown in light of the "danger that a [t]rial begun as a class action would degenerate in practice into multiple lawsuits separately tried." *Burrell v. Crown Cent. Petroleum, Inc.*, 197 F.R.D. 284, 291 (E.D. Tex. 2000) (citation modified). As the

---

[6] The Court is not persuaded that financial impediments warrant a finding of superiority here. The Fair Housing Act makes attorney's fees available to private prevailing parties, 42 U.S.C. § 3613(c), thereby reducing "financial barriers that might make individual lawsuits unlikely or infeasible." *Allison*, 151 F.3d at 420. The Court does not give the availability of attorney's fees dispositive weight, *see Kincannon*, 168 F.4th at 734 (finding that district court did not abuse its discretion by finding superiority despite availability of attorney's fees), but considered this fact when analyzing whether superiority has been sufficiently demonstrated in this case.

class action device is not superior under the circumstances, deviation from the ordinary rule of individual representation is unwarranted. Class certification will therefore be denied.[7]

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Class Certification (Dkt. #37) is hereby **DENIED**.

It is further **ORDERED** that Plaintiffs' Supplemental Motion for Appointment of Class Counsel (Dkt. #102) is hereby **DENIED as moot**.

**IT IS SO ORDERED.**

**SIGNED this 24th day of July, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[7] The Court need not address FirstService's argument that Plaintiffs lack standing to represent an injunctive relief class because Plaintiffs withdrew that class during the class certification hearing. The Court finds that Plaintiffs have standing to bring suit on their own behalf, and the issue of unnamed class member standing is not before the Court because no class was certified. The Court also does not need to reach the parties' objections launched in the briefing because class certification is unwarranted whether the Court considers the challenged evidence or not.